## A. W. FOSTER, Respondent, v. FIDELITY SAFE DEPOSIT COMPANY, Appellant.

**Kansas City Court of Appeals, March 4, 1912.**

1. **LOST PROPERTY: Safety Deposit Company: Proper Custodian.** A safety deposit company had a vault divided into private steel boxes which it rented to customers. It likewise had a number of small compartments for use of these customers and in which were a chair and a desk, envelopes and a pair of scissors. A customer would get his box from the vault and enter one of these compartments when the door would close and lock automatically. When through with examining his valuables, the customer would come out, the door closing behind him, and return his box to the vault. An attendant, kept by the company in charge of these compartments, would then enter and straighten up the compartment, making it ready for use of the next customer who might choose to enter it. A customer was in one of these compartments with his box, and after examining his papers, was about to come out when he discovered one of the envelopes, piled with others on the corner of the desk, looked somewhat bulky, and on looking into it found it contained money. He took it to one of the company's officers and gave it to him, thinking the company would be able to locate the owner. The company was unable to find the owner and afterwards the customer demanded it. The company refused to deliver to him. It was *held*, that the money was not lost and that the company was the proper custodian and that the plaintiff could not maintain an action.

2. ———: ———: **Possession: Thief: Finder.** Property in the possession of another, even if he be a thief who stole it, is not lost in a legal sense; and he who should take it from the thief is not a finder of lost property in a legal sense.

3. ———: ———: **Property Mislaid and Forgotten: Table.** Money placed or mislaid on a desk in a room and forgotten by the owner, is not lost in a legal sense, though he cannot remember where he left it, and it remains in the custody or possession of the proprietor of the house, to the exclusion of every one but the true owner. Cases discussed.

4. ———: ———: **Money Found on Floor: Unknowingly Dropped.** Money found on the floor of a business house in such condition as to indicate that it had not been placed there, but had been involuntarily or unknowingly dropped, is lost, and the finder becomes entitled to the possession against the proprietor of the house and every one else but the true owner.

Appeal from Jackson Circuit Court.—*Hon. John I. Williamson,* Special Judge.

REVERSED. CERTIFIED TO SUPREME COURT.

*Bowersock, Hall & Hook* for appellant.

*Edward P. Garnett* for respondent.

ELLISON, J.—Defendant is a safe deposit company. It maintains individual safes or compartments which it rents to customers for the safe-keeping of money and other valuable articles. Each of these contains a box which may be withdrawn and in which the customer places his money, papers or other valuable articles. It requires two keys to open one of these safes, one carried by the customer and the other by the attendant in charge. Its place of business is on the same floor and in practically the same room occupied by a banking institution known as the Fidelity Trust Company; it being separated therefrom by a steel fence. A customer enters from the street through the bank, thence through a steel gate operated by an attendant, thence into the vault through another gate opened by an attendant. Here he and the attendant open his compartment and he takes out his box and goes to a small private room containing a desk and chair. On the desk are some envelopes, blotters and a pair of scissors. He is admitted into this by an attendant, and when he leaves, the door closes and locks automatically; whereupon the attendant unlocks it and makes the room ready for the next occupant.

Plaintiff had a compartment rented of defendant, and on the afternoon of April 13, 1906, he took his box therefrom in the usual way, was admitted into one of these private rooms by the attendant, where he examined some papers in his box, and as he was about to leave the room he noticed an envelope lying

on the corner of the desk "that seemed to be a little puffy." He looked into it and found it contained $180 in bills. Neither the envelope nor the money had any name or mark of identification. He took his box back to the vault, and supposing the money belonged to some of defendant's customers, handed it over to one of its officers to find the owner.

Defendant keeps a record of the name of each customer and the day he takes his box from the vault, and it has written to each customer who took out his box on the day plaintiff discovered the money, and it has made diligent search for the rightful owner, but up to the time of the trial (30th November, 1910), had not found him. After a time plaintiff demanded a return of the money, and defendant refusing to deliver it, this action followed, in which plaintiff had judgment.

Neither plaintiff nor defendant claims to be the owner of the money. Plaintiff makes no pretense that the money was intentionally abandoned by the owner, and if he should be successful in this action, he must institute certain proceedings prescribed by sections 8268-8273, R. S. 1909, concerning lost property, whereupon, if no owner appears by the end of a year, he would become the owner by force of the law. The question for decision, therefore, is not who owns the money, but which of the parties is entitled to the possession of it; or, better stated, which is the proper custodian. Plaintiff, to sustain himself, must show that he found money which was lost. Property in the possession of another cannot be found, in the sense of the law of lost property, for the reason that it is not lost. Even if discovered in possession of the thief who stole it, the discoverer has not found it, for the reason that being in the thief's possession, it is not lost. If, therefore, the money in controversy was in the possession of defendant when discovered

by plaintiff, plaintiff could not have found it, as that word is understood in the law of lost property.

A few words on the subject of the possession of one thing carrying along with it the possession of other things connected therewith, will help to determine the controversy. In South Staffordshire Water Co. v. Sharman, 2 L. R. Q. B. Div. 44 (1896), it is said that: "The possession of land carries with it in general, by our law, possession of everything which is attached to or under that land, and, in the absence of a better title elsewhere, the right to possess it also. And it makes no difference that the possessor is not aware of the thing's existence." In that case the owner employed the defendant and others to clean out a pool and defendant found two gold rings in the mud at the bottom. He gave them to the police authorities, who endeavored by advertisement and otherwise to find the owner. On failing to find a claimant, the authorities returned them to defendant, whereupon the owner of the land brought an action of detinue. The judgment in favor of the owner was given by the Lord Chief Justice of England, who, among other things, said that: "The general principle seems to me to be that where a person has possession of house or land, with a manifest intention to exercise control over it and the things which may be upon or in it, then, if something is found on that land, whether by an employee of the owner or by a stranger, the presumption is that the possession of that thing is in the owner of the *locus in quo*."

In Elwes v. Brigg Gas Co., L. R. 33 Ch. Div. 562, a prehistoric boat forty-five feet long and made of a single log, was found six feet underground, by lessees in excavating for a gas holder, and it was held that the possession of the boat, whether regarded as a part of the soil or as a chattel, was in the owner of the land, and that it made no difference that he did not know of its existence.

In Ferguson v. Ray, 44 Ore. 557, some gold-bearing quartz rock, in a cloth sack, was found buried in the ground by a lessee of the land. The sack had rotted away, leaving only its appearance. It was held to be in possession of the owner of the land, and that though the tenant discovered it, he was not entitled to it. That case refers to one in New York (not within our reach) where some ancient dishes, supposed to have been buried by an officer in the French-Indian war 150 years before when he was compelled to flee from Indians, was plowed up; and it was held to be well established that where a thing is embedded in the soil, the right is in the owner of the land, unless it be such character of gold or silver as to constitute a treasure trove.

In Goddard v. Winchell, 86 Iowa, 71, an aerolite fell upon a man's farm and buried itself three feet beneath the surface. Afterwards it was found by a neighbor, who dug it out and claimed it. It was held to be a part of the soil and in possession of the owner of the farm.

An interesting case in New York (Burdick v. Chesebrough, 88 N. Y. Supp. 13) was a controversy over buried earthen ware, and it was held that the owner of the land was entitled to it as against him who dug it up, and that when found and taken up it became the personal property of the owner of the soil as against the claim of the finder and every one else except the true owner.

And so it seems to have been thought necessary, as said to be shown in one of the parables, if a man wanted title to a treasure he had found hidden in a field, that he should "buyeth that field:" Matthew, XIII, 44.

There are two cases, cited by plaintiff, where gold coin (treasure trove) was found buried and it was held that the finder had a better title or right to the possession than the owner of the premises. [Danielson

v. Roberts, 44 Ore. 108; Weeks v. Hackett, 104 Me. 264.] They bear no resemblance to the facts in this case.

Now in whose possession was the money when discovered by plaintiff? It could scarcely have been more in defendant's possession, unless it had been in the pocket of one of its officers. It was not only in defendant's place of business, but was in a separate apartment, from which the public was excluded; and, more than that, it was on a desk in a little private compartment kept under the immediate and constant guard and supervision of one of defendant's attendants. A roguish street urchin, if by possibility he had gained access to this place and discovered the envelope on the desk, would have had the same right to it that plaintiff had. Suppose the attendant had observed the boy as he found it; would he have been justified in letting him carry it off? Would it not have been his duty to assert defendant's right of possession and to take it from the boy? Would not the real owner, had he afterwards appeared, have had legal ground of complaint against defendant, as his bailee, for gross neglect in allowing the money to be carried off in full view? It is no answer to this suggestion, nor does it show any distinction between the supposed case and the real one, to say that in the former the owner appeared and in the latter he has not. For, whatever legal right there was to possession of the money, came into existence the moment plaintiff discovered it. If it was in defendant's possession then, it remained in its possession, and it should hold it for the owner, subject to such rights and duties as arise under the law of bailment or trusteeship. If plaintiff found the money, in the legal sense, then he was entitled to the possession, no matter whether the owner was afterwards ascertained or not. He was entitled to the possession as a step in his ultimate ownership, if no owner appeared after

he had gone through with the statutory process as to lost property. If plaintiff was the finder of lost property, in the legal sense, he was under no duty or obligation to leave it with defendant to ascertain the owner, or to say anything about it. Indeed he violated his duty in leaving it with defendant; for he should, within ten days, have begun proceedings before a justice of the peace as a finder of lost property (Sec. 8268, R. S. 1909). So, therefore, we repeat that the rights of each of the parties to this controversy were full grown the moment plaintiff discovered the money. The subsequently developed fact of no owner being found up to the date of this action, does not affect the status of either party as to the right of possession at that time. And the question on the supposed case recurs: Would it have been the duty of the attendant to have asserted a right in defendant to possession as against the urchin's claim of finding it? The answer is plain. If the money was lost, in a legal sense, defendant had no sort of possession of it and owed no duty towards it and had no right to question the honesty of the finder. But if defendant did owe a duty to it, then it was in its custody and plaintiff could have no claim as a finder; for it is not within the bounds of reason or good understanding to say that a thing is lost which is in the possession of another and under that other's protection.

Authority is abundant and uniform in support of defendant's possession and right of custody. Beginning first with our own state, we have the case of Hoagland v. Amusement Co., 170 Mo. 335, an action for unlawful arrest and assault and battery. Defendant operated a summer place of amusement and refreshment in the open air, all parts of which were free and open to the public, except a theater which was fenced off from other parts. Plaintiff attended the theater and then took a seat at one of the many tables scattered about the premises, where he found

a pocket-book lying on the ground. In attempting to leave the pocket-book at the ticket office, which he found closed, he got into a dispute with some of defendant's employees, who claimed to be the proper custodians of the pocket-book, and the assault he complained of was made. In the course of the opinion, the Supreme Court stated the law as to lost property in these words (italics ours): "Now, the authorities as a general rule hold that money or other property voluntarily laid down and forgotten is not, in legal contemplation lost, and that *the owner of the shop, bank or other place where it is left is the proper custodian rather than the person who happens to discover it,* as well also as to all other persons except the owner." But plaintiff insists that this statement of the law is a mere dictum, made without careful consideration of the cases cited in support of it. Passing by any discussion with plaintiff as to whether the proposition is dictum, and passing by any question that, dictum or not, *it is our duty to follow it,* an examination of the authorities on the question leaves no doubt that what the court stated in Hoagland v. Amusement Co., has been recognized as the law wherever a like question has arisen. It seems to us that counsel treats too lightly the distinction made between conditions in which money or other valuables may be discovered by an alleged finder. Property may be separated from the owner by being abandoned, or lost, or mislaid. In the first instance, it goes back into a state of nature, or, as is most commonly expressed, it returns to the common mass and belongs to the first finder, occupier or taker. In the second instance, to be lost, it must have been unintentionally or involuntarily parted with, in which case it is also an object which may be found and the finder is entitled to the possession against every one but the true owner. But, if it is intentionally put down, it is not lost in a legal sense, though the owner may not remember where he

left it, and cannot find it.  For "the loss of goods, in legal and common intendment, depends upon something more than the knowledge or ignorance, the memory or want of memory, of the owner at any given moment." [Lawrence v. State, 1 Humph. 228.] From these uniformly recognized rules of law on the subject of lost property, has naturally sprung the importance of the condition or situation in which property is alleged to have been found.  And the law in this instance, as in so many others, founds its rule upon the natural action of men and not upon a possibility.  Thus articles of property may be such and circumstances may be such as to make clear they have been voluntarily abandoned by the owner.  But normally, men do not voluntarily abandon their money. Therefore, if money be discovered in the highway, or on the ground, or on the floor, it will not be considered as abandoned, nor will it be considered as placed there voluntarily, for that would be unnatural, but as having been lost—that is, casually and unknowingly dropped.  But if it be discovered in a drawer, or on a table, it will be considered as having been placed there purposely by the owner, and it is not classed by the law as lost property.  The circumstance of it being afterwards forgotten does not go back and characterize the original act.

Therefore if a person goes into another's public place to transact business with him and places his money on a table or desk and comes away forgetting he had done so, he has left it in the possession of the owner, or, as is expressed, he has left it within the protection of the house.  This rule has been stated and conceded to be established law, in a number of cases where the situation of the property was such as to make it lost property.  We will first refer to these.  A case referred to with much frequency is that of Bridges v. Hawkesworth, 7 Eng. L. & Eq. 424. There the plaintiff, being in the defendant's public

shop, found money on the floor, and it was held he was entitled to the possession as finder. The court saying that, "The notes were never in the custody of the defendant, nor within the protection of his house, before they were found, as they would have been had they been intentionally deposited there." All the cases (we have not found an exception) which recognize the right of the finder of property in a public house or place of business, recognize the rule that if the money is discovered on a table, or desk, or in a drawer, it is not lost in a legal sense, but is within the possession and protection of the owner of the house.

Thus in Hamaker v. Blanchard, 90 Pa. St. 377, a servant found money on the floor of one of the public parlors of a hotel, and it was held that she was entitled to it against every one but the true owner. The court, however, stating: "But property is not lost, in the sense of the rule, if it was intentionally laid on a table, counter or other place, by the owner who forgot to take it away, and in such case the proprietor of the premises is entitled to retain the custody. Whenever the surroundings evidence that the article was deposited in its place, the finder has no right of possession against the owner of the building." The same distinction is made in the instance of money having been left in an old safe and thence had slipped or been accidentally shoved in a crevice in the safe and thus become hidden. [Durfee v. Jones, 11 R. I. 588.] And where money was found in an envelope on the floor of a paper mill, which manufactured paper from old paper, the owner of the mill claiming that he had bought the money with the envelope. [Bowen v. Sullivan, 62 Ind. 281.]

But the rule stated by the Supreme Court in the Hoagland case does not depend for support alone on mere recognition, as in the foregoing cases. It has been applied uniformly in cases which are like the one

at bar. Thus in McAvoy v. Medina, 11 Allen, 548, the court said: "But this property is not, under the circumstances, to be treated as lost property in that sense in which a finder has a valid claim to hold the same until called for by the true owner. This property was voluntarily placed upon a table in the defendant's shop by a customer of his who accidentally left the same there and has never called for it. The plaintiff also came there as a customer, and first saw the same and took it up from the table. The plaintiff did not by this acquire the right to take the property from the shop, but it was rather the duty of the defendant, when the fact became thus known to him, to use reasonable care for the safe keeping of the same until the owner should call for it." And in Kincaid v. Eaton, 98 Mass. 139, the court went the length of holding that even where the owner left his pocket-book on a desk in a bank, and, supposing he had lost it, advertised a reward to any one who found it, he who discovered it on the desk was not entitled to the reward as it had not been lost and was not found. The court said that: "To discover an article voluntarily laid down by the owner within a banking house, and upon a desk provided for the use of such persons having business there, is not the finding of a lost article. The occupants of the banking house and not the plaintiff, were the proper depositaries of an article so left. The plaintiff has not established a legal right to the reward according to the terms by which it was offered, and therefore cannot retain his verdict."

The case of Loucks v. Gallogly, 23 N. Y. Supp. 126, bears great likeness to the one before us. There the plaintiff discovered fifty dollars in bills on a desk in the National Exchange Bank of Albany, and handed it to the bank teller to hold for the owner, and none made claim. Two years passed and plaintiff sued the teller. The court said that: "It has been held

that in order to constitute legal losing the thing must have been actually lost by the owner, and not merely mislaid; that is, he must not voluntarily and purposely have laid it away in a certain place for a time, with the intention of retaking it, and then have forgotten where he had placed it; but it must have involuntarily and accidentally, as respects the owner, gotten out of his possession."

The case of Deaderick v. Ooulds, 86 Tenn. 14, concerned the right to possession of a lost log. It seems that defendant found it stranded upon rocks in a stream, and that he turned it loose into the stream to float down to his boom below; but before it reached there the boom broke and the log floated onto and lodged upon an island belonging to plaintiff. Plaintiff claimed it as a lost log and as owner of the land upon which it lodged. Defendant claimed it as the original finder and took it from the island; whereupon plaintiff brought replevin. The court, in the course of an opinion by Justice Lurton, now of the United States Supreme Court, said, in cases of alleged lost property that: "It is essential, however, in such cases that the property must be *found;* that is, it must, at the time when the finder came upon it, have been in such a situation as to clearly indicate that it was *lost,* and not voluntarily placed by the owner where it was found, by carelessness or forgetfulness. If it was evidently laid where it was found, it then becomes the duty of the owner of the premises to keep the property for the owner, as in such cases he is treated as a *quasi* bailee, and he may maintain trover therefor against the finder; as if a pocket-book is found upon a desk or counter in a store or bank, the presumption is that the owner placed it there and forgot it."

A case to which we have already referred (Lawrence v. State, 1 Humph. 228) is a leading one on this subject. At the common law, lost property could not

be the subject of larceny and in that case Lawrence insisted the money he was accused of stealing, was lost. The circumstances were that he was a barber and found a pocket book containing $480 in money, on a table in his shop. The court denied his defense, and among other things, said that: "To place a pocket-book upon a table, and to omit or forget to take it away, is not to lose it in the sense in which the authorities speak of lost property."

The mind refuses consent to the proposition that one may go into another's house, whether business or residence, and take away anything he discovers there which does not belong to the owner. If one visits an acquaintance socially at his home, and comes away leaving some article on a table, he has left it in the possession of such acquaintance, and it seems absurd to say that another visitor would have a right to take the property from the house under the claim that he had found it.

The judgment should be reversed. *Broaddus, P. J.,* concurs.

## DISSENTING OPINION.

JOHNSON, J.—I dissent, and as I view the facts of this case I conclude the foregoing decision is in conflict with the true intent and purpose of the statutes relating to lost property and with the principles of law enunciated by the Supreme Court in Hoagland v. Amusement Company, 170 Mo. 335, and State v. McCann, 19 Mo. 249. Accordingly I certify the cause to the Supreme Court.