# NANNIE M. JOHNSON v. HARTFORD INSURANCE COMPANY, Appellant.

### Division Two, July 16, 1917.

1. **ASSESSMENT INSURANCE: Admission in Annual Report: Evidence.** Where the assessment insurance policy provided that when the safety fund reached one million dollars the excess should be applied to the payment of premiums, the annual report by the company to the State Insurance Department showing a safety fund on hand in excess of that sum at the time the company declared a forfeiture of the policy for non-payment of an assessment, is competent evidence, as an admission, and while the company has the right to explain said admission, by showing there were two safety funds, one for men and the other for women, whose aggregate amounts were consolidated in the report, it has no right as a matter of law to say that its explanations and not its prior written admissions shall be believed by the jury. Such admission is sufficient evidence, even in face of such explanation, upon which to found a finding that the safety fund exceeded one million dollars.

2. ———: **Forfeiture: Burden of Proof.** Where the charter and by-laws of the assessment insurance company provide that all the affairs of the company shall be managed and controlled by a board of directors, and the company for a defense to a suit on the policy counts upon a forfeiture for failure to pay an assessment, the burden is upon the company to show an assessment levied in strict accord with the contract and that it was made by the board of directors; and it is not error to so instruct.

3. ———: ———: **Excessive Assessment.** A forfeiture of an assessment policy cannot be predicated upon the non-payment of an assessment which was excessive.

Johnson v. Insurance Co.

4. ————: Assessments to Create Future Mortuary Fund: Forfeiture. Unless the power is conferred by the policy contract, an assessment insurance company does not have the right to make assessments for death losses occurring in the future in order to provide a mortuary fund from which future death losses can be promptly paid; and, if there is on hand a sufficient mortuary fund to pay accrued death losses at the time the assessment is made, the policy cannot be forfeited for failure to pay an assessment to meet anticipated death losses.

5. ————: Abandonment of Policy: Not Pleaded. Abandonment of a contract of insurance is an affirmative defense which to be available must be pleaded; and an allegation that the insured for five years acquiesced in the forfeiture of his policy is not a plea of abandonment. Forfeiture implies a cancellation of an existing right, while abandonment is a voluntary surrender of such right.

6. ————: ————: Consideration on Appeal. Abandonment is largely a question of intention to be determined upon a proper showing by the jury as a question of fact, and the burden is on him who asserts it; and where nothing but acquiescence in a forfeiture was pleaded, and there was no attempt to submit the question by instructions to the jury, the court will not on appeal determine whether or not there was evidence showing an abandonment of the insurance policy by the insured.

Appeal from Henry Circuit Court.—*Hon. C. A. Denton,* Judge.

Affirmed.

*Jones, Jones, Hocker & Davis, Wash Adams* and *Lewis Sperry* for appellant.

(1) There is no evidence tending to show that there was any excess in the safety fund, and it was error to permit the jury to find that there was an excess in such fund. The reports to the Insurance Department should have been excluded. Janssen v. Stone, 60 Mo. App. 402; Schwartz v. Frank, 183 Mo. 447. (2) There is no evidence tending to show that there was any excess in the mortuary fund, and it was error to permit the jury to find that there was an excess in such fund. Crossman v. Assn., 9 N. E. 753; McGowan v. Int. Council, 76 Hun, 534; Smith v. Cor. Mut., 16 Tex. Civ. App. 593. (3) There is no evidence tending to show what was Dr. John-

son's share of the assumed excess in the safety fund and mortuary fund, and it was error to permit the jury to find that his share of this supposed excess "was sufficient to pay the amount of the premium due" by Dr. Johnson. Dresser v. Hartford Life, 80 Conn. 681; Crossman v. Mass. Ben., 9 N. E. 753; McGowan v. Sup. Council, 76 Hun, 534; Smith v. Cor. Mut., 16 Tex. Civ. App. 593; Rosenberger v. Washington Co., 87 Pa. St. 207; White v. Ins. Co., 93 Mo. App. 282; Newcomb v. Jones, 37 Mo. App. 475; 2 Wigmore, Ev., p. 1228, sec. 1058; Sands v. Boutwell, 26 N. Y. 233; White v. Ross, 4 Ab. App. 289; White v. Coventry, 29 Barb. 305. (4) Instruction No. 1 is erroneous, conflicting and misleading, in that it authorizes the jury to find that "there was a sum of money in excess of $1,000,000 in the, safety fund. . . . and a surplus in the mortuary fund" and that "Dr. Johnson's share in such excess, if any, was sufficient to pay the amount of the premium due." (5) Instruction No. 2 is erroneous in that it put upon the defendant the burden of showing that it was "necessary" for defendant to levy Call 95 and to show that such call or assessment "was made by the directors of the defendant" and to show that said call "was not for a larger amount than was necessary to pay the death losses which had accrued up to that time," and that such call was not for a larger amount than was necessary "after giving Dr. Johnson credit for his *pro rata* share of the excess in the safety fund and mortuary fund, if any," and because there is no evidence from which the jury could find that the assessment was for a larger amount than was necessary and no evidence from which they could find what was Dr. Johnson's share of the supposed excess in either the safety fund or mortuary fund. (6) Instruction 3 is erroneous in that (a) it makes the defendant liable if the jury shall find that "there was in the hands of the defendant a mortuary fund which had been collected from previous assessments," because necessarily such fund was, in the main, the result of previous assessments and the creation and maintenance of such mortuary fund was the defendant's duty under the contract, and (b)

said instruction makes it the duty of the defendant to entirely use up said mortuary fund before it could lawfully levy the assessment or call in question. Said instruction is also erroneous in that it submits no facts for the jury to find, but merely generalities or conclusions. Fee v. National Assn., 110 Iowa, 275; Assn. v. Birnbaum, 116 Pa. St. 565; Niblack, Ben. So., sec. 280; Miles v. Mut. Res., 108 Wis. 421; Mee v. Assn., 69 Minn. 210, 212; Van Frank v. Assn., 158 Ill. 565; 2 Cooley's Briefs Ins., p. 1027; Felver v. Railroad, 216 Mo. 195; Ascher v. Schaeper, 25 Mo. App. 1; Gerrans v. Mfg. Co., 51 Mo. App. 618; Glick v. Railroad, 57 Mo. App. 97; Bates v. Railroad, 98 Mo. App. 330; Furber v. Bolt Co., 185 Mo. 302; Stokes v. Burns, 132 Mo. 214; Holland v. Vinson, 124 Mo. App. 417; Kennedy v. Railroad, 128 Mo. App. 299; Turner v. Snyder, 139 Mo. App. 656. (7) The amount of the safety fund or mortuary fund is no factor in determining the validity of Call 95. (8) There was an abandonment of the contract by the insured and aequiescence in the asserted forfeiture. Ryan v. Assn., 96 Fed. 796; Mutual Life v. Phinney, 178 U. S. 327; Mutual Life v. Sears, 178 U. S. 345; Mutual Life v. Hill, 178 U. S. 347; Mutual Life v. Allen, 178 U. S. 351; Jones v. Ins. Co., 28 Ins. L. J. 834; Haydel v. Assn., 98 Fed. 200; Smith v. Ins. Co., 63 Fed. 769; McDonald v. Grand Lodge, 21 Ky. L. 883; Lane v. Ins. Co., 33 Wash. 57; Lavin v. A. O. U. W., 112 Mo. App. 1; Glardon v. Sup. Lodge, 50 Mo. App. 45; Miller v. Grand Lodge, 72 Mo. App. 499; Bange v. Supreme Council, 128 Mo. App. 461; McGeehan v. Insurance Co., 131 Mo. App. 417; Robinson v. Mutual Reserve, 182 Fed. 860.

*Parks & Son* and *Fyke & Snyder* for respondent.

(1) The evidence clearly shows and the jury, under proper instructions, found, that no legal assessment had been made upon deceased. The appellant, to enforce a forfeiture has cast upon it the burden of showing a legal and proper assessment. King v. Ins. Co., 133 Mo. App. 612; Earney v. Modern Woodmen, 79 Mo. App. 305; Agnew v. A. & W. W., 17 Mo. App. 254; Pushman v. An-

nuity Co., 92 Mo. App. 640; Lewis v. Benefit Assn., 77 Mo. App. 586. Even if an assessment had been made by proper authority, still if the same was excessive, the policy could not be forfeited for failure to pay the same. Peoples v. Ins. Co., 7 Allen (Mass.), 235; Benjamin v. Mut. Reserve, 79 Pac. 517. Under the terms of the policy levies could be made against members for the purpose only of forming a mortuary fund for the payment of all indemnity matured by "death of members," which assessments to be levied upon all the members in the department wherein this certificate is issued whose certificates are in force "at the dates of such deaths," shall be made according to the table of graduated assessment ratios given herein, and as further determined by their respective ages and the aggregate maximum of indemnity "at the dates of such deaths," with due allowance for discontinuance of membership. So it will be seen that the assessments authorized by the contract are strictly post-mortem assessments. The fact that it may be more convenient for the company to have funds on hand to meet anticipated deaths is no justification or excuse for making ante-mortem calls. Schultz v. Ins. Co., 59 Minn. 308. The company had no right to reserve and keep on hand a large surplus in order that it might pay its future death losses, and any alleged assessment made under such circumstances was null and void. Lee v. Mutual Reserve Fund, 97 Va. 160. Appellant seeks to establish a forfeiture. To do that it must show that it has not departed one jot or tittle from the terms of the contract. (2) There is no question of abandonment or acquiescence in this case for review by this court. Abandonment was not pleaded. There could be no abandonment under the facts in this case. If deceased was called upon to pay more than was due, he was under no obligations to offer to pay what was in fact due, if anything. Gruewell v. National Council, 126 Mo. App. 496; Purdy v. Ins. Co., 101 Mo. App. 91; Hyatt v. Legal Protection Assn., 106 Mo. App. 614. "To constitute an abandonment of the legal right secured, there must be a clear unequivocal and decisive act of the party—an act done that shows a

determination not to have the benefit which is designated for him.'' 1 Words & Phrases, p. 4. Abandonment is an affirmative defense and must be pleaded, and must be established by proof, and the question if any proof on the subject be offered, is for the jury.

WILLIAMS, J.—This is an action upon a policy of life insurance issued by the defendant company, on November 1, 1888, to James T. Johnson, in the sum of five thousand dollars, payable, upon the death of the assured, to Nannie M. Johnson, the named beneficiary, therein. The defendant company seeks to avoid payment 'of the policy on the ground that the policy became forfeited because the assured failed to pay a premium assessment thereon. Trial was had in the circuit court of Henry County, before a jury, resulting in a verdict and judgment in favor of the plaintiff for the full amount of the policy, plus interest, which amounted to the total sum of $5556.66. Thereupon the defendant company duly appealed to the Kansas City Court of Appeals, which court (166 Mo. App. 261) affirmed the judgment. The case was certified here by the Kansas City Court of Appeals on the ground that the majority opinion of that court was in conflict with certain decisions of the St. Louis Court of Appeals.

By the pleadings it stands admitted that defendant was a corporation and that it had issued the insurance policy upon which this suit was founded; that the assured died on the 15th day of February, 1907, and that plaintiff is the named beneficiary in said policy and since the death of the assured has complied with all of the requirements of said policy. It was further admitted that plaintiff had made demand for the payment of the policy, which had been refused.

The evidence upon the part of the plaintiff was substantially as follows:

The policy contract was introduced in evidence. Portions of the contract necessary to an understanding of the issues are as follows:

"In consideration of the representations, agreements, and warranties made in the application herefor, and of the admission fee paid; and of three dollars per annum on each $1000 of the indemnity herein provided for, for expense dues, to be paid as hereinafter conditioned, and of the further payment of all mortality calls proportioned to the said indemnity, levied against the herein named member to form a mortuary fund for the payment of all indemnity matured by deaths of members, and to create a safety fund as hereinafter described, which mortality calls, to be levied upon all the members in the department wherein this certificate is issued whose certificates are in force at the dates of such deaths, shall be made according to the table of graduated mortality ratios given hereon, and as further determined by their respective ages and the aggregate indemnity at the dates of such deaths, with due allowance for discontinuance of membership (one-third of the proceeds of such mortality calls to be applied towards said safety fund until the sum of ten dollars on each $1000 indemnity aforesaid, shall have been thus applied, when the basis of all subsequent mortality calls shall be two-thirds only of the table given hereon), does hereby issue this certificate of membership in its safety fund department to James T. Johnson (herein called the member), of Clinton, County of Henry, State of Missouri, with the following agreements:

"That ninety days from the receipt by the president or secretary of said company of satisfactory proofs, in accordance with forms furnished upon notice of death and with full information as to the manner and cause of the death of the herein named member while this certificate is in force, all of the conditions hereof having been conformed to by the member, upon presentation and surrender of this certificate properly receipted, there shall be due and payable, out of the aforesaid mortuary fund and not otherwise, the indemnity of five thousand dollars (less the balance unpaid, if any, of the stipulated contribution to said safety fund, with fifty per cent added, together with the unpaid installments of annual

expense dues and any mortality or other charge against the member, payment of which is not matured) to his wife, Nannie M. Johnson, if living; otherwise to his legal representatives. All such payments to be made at the home office of said company in lawful money of the United States.

"That said company will deposit said sum of ten dollars, when received, with the trustee, named in a contract made with it (of which a copy is printed hereon), as a safety fund in trust for the uses and purposes expressed in said contract; and shall make a semi-annual division of the net interest received therefrom by it, *pro rata* among all the holders of certificates in force in said department at such times, who shall have contributed five years prior to the date of any such division their stipulated proportion of said fund, by applying the same to the payment of their future dues and assessments; and that, whenever said fund shall amount to one million dollars, all subsequent receipts therefor shall be divided by the said company in like manner as the interest."

The policy also provided that upon a failure to pay the annual dues, mortality calls and safety fund deposit as required by the contract, the policy should become null and void and of no effect. Plaintiff introduced in evidence that portion of the annual statements of the defendant company made to the Insurance Department of the State of Missouri, showing the condition of the safety fund department for the years ending December 31, 1900, 1901, 1902, 1903, 1904, 1905 and 1906. The report for the year ending December 31, 1900, showed the following items:

Net safety funds in Security Company of Hartford,
    Conn. .................................................. 1,112,569.14
Reserve on safety fund policies ..................... 230,220.00
Mortuary fund held in addition to reserve .......... 111,495.36
Premiums in course of collection, safety fund department ...................................................... 349,000.00

The report for the year ending December 31, 1901, contained the following items:

Net safety funds in security company ................ 1,166 905.02
Reserve on safety fund policies ..................... 262,257.00
Mortuary and other funds in addition to reserve .... 116,313.59
Premiums in course of collection, safety fund depart-
    ment ......................................... 358,300.00

The report for the year ending December 31, 1902, shows the following items:

Net safety funds ...............................$1,176,561.25
Special reserve and surplus on safety fund policies .. 352,640.92
Premiums in course of collection, safety fund depart-
    ment ......................................... 198,250.00

The evidence upon the part of the defendant was in deposition form and consisted largely of the deposition of George E. Keeney, president of the defendant company.

The charter of the defendant company was introduced in evidence, showing that it was chartered to do a life insurance business by the Legislature of the State of Connecticut. The by-laws of the company which were introduced in evidence provided that the board of directors "shall have full power to exercise the corporate powers conferred upon the company by its charter and any amendments thereof excepting as shall be otherwise determined by the by-laws or resolutions of the company," and further provided that three directors "shall constitute a quorum for transacting the ordinary business of the corporation."

The defendant company, from the date of its organization until 1880, issued what is known as the legal-reserve or old-line insurance policies. From 1880 to 1899 it issued the safety-fund or assessment form policies. This is the form of policy involved in this suit. In 1899 it ceased doing the assessment or safety-fund business and again began doing the old-line or legal-reserve business.

From the date of the issue of the policy in this case up until the assessment due June 1, 1902, the assured paid all dues and assessment calls made against this policy. Call No. 95, which was not paid by the assured and upon which defendant bases its forfeiture, was laid or

assessed as of date April 1, 1902, and was due and payable June 1, 1902. The amount stated in the call as due upon Dr. Johnson's policy was $74.55. This call was mailed to Dr. Johnson May 2, 1902. It states that the call is due June 1, 1902, and that it is made to meet one hundred and thirty-seven deaths, amounting to $369,859. A list of the one hundred and thirty-seven deaths accompanied the call. On June 10th a second notice was mailed by the defendant company to Dr. Johnson, calling his attention to the fact that the quarterly call No. 95 had not been paid by him and stating further that unless the amount of the call plus fifty cents for the additional notice should be received at the home company on or before June 20, 1902, the policy should be cancelled. On June 19, 1902, Garland S. Johnson, son of the assured, wrote defendant company the following letter:

Schell City, Mo., June 19, 1902.

Hartford Life Ins. Co.,
     Hartford, Conn.
  Gentlemen:—

    My father and I both have been out of town and did not get to attend to payment due on policy 109854, Hartford Life & Annuity Insurance Co., on life of Jas. T. Johnson. I see our time expires tomorrow. What steps can we take now to make payment and have it reinstated. Father is in perfect health. I am very sorry indeed for the delay, but it could not possibly be avoided. Kindly let us know by return mail.

                    Yours very truly,
                    Garland S. Johnson,
                    June 24, 1902.

On June 24, 1902, the defendant company replied to said letter as follows:

Garland S. Johnson,
     Schell City, Mo.
  Dear Sir:

    As you wrote us before the last day of grace expired for payment of the June call, policy No. 109854, we are warranted in extending the time of payment, and have given you until July 5th to renew the policy. If, therefore, you wish to remit us $75.05 on or before that date, the policy will be kept in force.

                    Yours truly,
                    E. A. Wright,
                    Chief Clerk.

Call No. 95 was never paid by the assured or by anyone for him and it appears that no further communication was had between the defendant company and the assured thereafter.

Garland S. Johnson was called to testify in the case by the defendant and, upon direct examination, testified that he wrote the above mentioned letter to the defendant company without any authority from his father, the assured, and that his father didn't know anything about it until he received the above reply and that his father then said that "he would attend to it." On cross-examination this witness testified that at that time he knew nothing about the company's mortuary fund, reserve fund or safety fund.

The evidence upon the part of the defendant attempts to explain the annual report made by it to the Insurance Department of the State of Missouri, by stating that the company carried two safety funds, one known as the men's department safety fund and one known as the women's department safety fund; that in truth and fact these two funds were levied separately and kept separately by the security company, under two separate contracts, and that the two funds were erroneously added together and appeared as one fund in the annual reports. The evidence upon the part of the defendant further tended to show that the men's department safety fund attained the sum of one million dollars on December 31, 1893, and that ever since that date all interest thereon, together with dues thereto, were turned over by the security company to the defendant company and by it distributed to its policy-holders, under the terms of its policy contracts; that on April 30, 1902, the book value of the men's safety fund was $1,056,354.04, but that the par value was only one million dollars; and that on June 1st of the same year the stock value of the men's safety fund was $1,056,654.04 and the par value thereof was $1,000,000.

It further appeared that the average death loss per month was about $100,000. The president of the company described the different items going into the assess-

ment call No. 95. It appears that the lapses were esti-
mated at five per cent, and later turned out to be 3.52
per cent. Call No. 95 was assessed by the president and
secretary of the company or by the vice-president and
secretary of the company or by the vice-president and
someone acting for the secretary; that the practice of the
company in levying calls for assessment was not only
for the purpose of paying existing death losses, but also
for paying anticipated death losses occurring before the
next call; that call No. 95, together with the mortuary
funds on hand, had not only to provide for existing death
losses, but also all anticipated death losses that would
occur before September 1, 1902; that the death losses
were not paid from any particular call, but were paid
from the mortuary fund, and the mortuary fund
was in turn replenished by the quarterly calls, and
that death losses were frequently paid from the mortu-
ary fund before an assessment was made to pay that
particular loss; that all death losses were included in
some assessment and the receipts from all assessments
were paid into the mortuary fund, from which fund death
losses were paid; that this was done as a matter of con-
venience, so that death losses might be paid within nine-
ty days from the date of proof.

The trust agreement between the defendant insur-
ance company and the security company, a copy of which
agreement was attached to the policy in question, requir-
ed the security company to invest said trust fund in
United States bonds "until the whole fund shall amount
in such bonds at their par value to $1,000,000." It ap-
pears that after the policy in question was issued the
Legislature of Connecticut passed an act in 1889 au-
thorizing the defendant insurance company to invest its
safety fund in securities other than United States bonds,
and thereafter a large portion of the safety fund was
invested in railroad and municipal bonds. This possibly
explains the two items "book value" and "par value"
of the safety fund.

Dr. Johnson, the assured, was a member of the safe-
ty fund department, but the defendant company is a

stock company and he had no right to participate in the management of the company.

The defendant offered a demurrer to the evidence, which was overruled.

Plaintiff's instructions numbered 1, 2 and 3, given by the court, which are claimed to be erroneous by defendant, are as follows:

"1. The court instructs the jury that if you find from the evidence that at the time the defendant notified the deceased Johnson that his premium was due, and which defendant claims he failed to pay, there was a sum of money in excess of $1,000,000 in the safety fund mentioned in the contract, and a surplus in the mortuary fund mentioned in the evidence, then it was the duty of defendant to have applied such excess to the payment of premiums of policyholders; and if you find from the evidence that said Johnson's share in such excess, if any, was sufficient to pay the amount of premium due at the time said notice was given to him, then defendant could not declare said insurance forfeited for the failure to pay said premium.

"2. The court instructs the jury that it devolves upon the defendant to prove that it was necessary, at the time it claims an assessment was made, for failure to pay which it claims the insurance was forfeited, to make an assessment, and that an assessment was made by the directors of defendant, and that said assessment was not for a larger amount than was necessary to pay the death losses which had accrued up to that time, after giving said Johnson credit for his *pro rata* share of the excess in the safety fund over $1,000,000, if you find there was such excess, and in the mortuary fund, if you find there was excess in that fund, and unless defendant has so proven, it cannot declare said insurance forfeited.

"3. The court instructs the jury that if you find from the evidence there was on hand in said safety fund a sum in excess of $1,000,000, and if you find also there was in the hands of defendant a mortuary fund, which had been collected from previous assessments, then it was the duty of defendant to have applied such excess

in said safety fund and said mortuary.fund to the pay-
ment of death claims which had matured prior to the
time the notice was given to Johnson that his premium
was due, for failure to pay which defendant claims said
insurance was forfeited, and if defendant failed to so
apply said money, then it cannot claim that the insurance
is forfeited.''

It appears that defendant asked only one general
instruction and that was to the effect that there was no
evidence showing vexatious refusal to pay the amount
of the policy. This instruction was given. Defendant
seeks a reversal of the judgment on the ground that in-
structions numbered 1, 2 and 3 were erroneous, and on
the further ground that the assured has abandoned the
policy.

I. It is contended that instructions 1 and 3 above
are erroneous because there was no evidence which
would warrant the jury in finding that there was a sum
of money in excess of $1,000,000 in the safety fund. We
are unable to agree with this contention.

Instructions. We are of the opinion that the facts dis-
closed by the appellant's annual reports to the State's
Insurance Department supplied evidence sufficient to al-
low the jury to pass upon this issue of fact. Those an-
nual reports purport to be the ones· required by law to
be made by the appellant company to the Insurance De-
partment of this State and any required statements there·
in made as to the financial condition of the safety fund
department were properly admitted in evidence, at the
instance of plaintiff, as admissions of the appellant com-
pany. The appellant had the right, which right was ac-
corded it, to explain the admission contained in said
report but it has no right as a matter of law to say that
its explanation and not its prior written admissions shall
be believed by the jury. It was, we think, clearly the
jury's province to determine that point.

It is contended that instruction numbered 2 above
is erroneous because it places upon appellant the burden
of showing that Call 95 was made by the board of direc-

tors, and that the assessment was not for a larger amount than was necessary to pay the death losses which had accrued up to that time. From the evidence offered, it appears that the charter and by-laws of the appellant company provide that all the affairs of, the company should be managed and controlled by a board of ·directors.

In the. recent case of Barber v. Hartford Life Insurance Company, 269 Mo. 21 (a case very similar to the one now before us, and against the same company), Division One of this court had before it the questions now urged by appellant. It was there held that in relying upon a forfeiture, the burden was upon the company to show an assessment levied in strict accordance with the contract; that the assessment must be made by authority of the company's board of directors; and that a forfeiture of a policy could not be predicated upon the non-payment of an assessment which was excessive. The facts presented in the case at bar are sufficiently similar to the facts held in judgment in that case to bring this case clearly within the rule therein determined. We fully agree with the decision of that case upon the points here involved and it is, therefore, unnecessary to further discuss the various propositions here.

It is contended by appellant that, under the policy contract, it had the right to make assessments for death losses occurring in the future to provide a mortuary fund from which future death losses could be promptly paid. We are unable to agree with this contention.

This identical point was recently before the Supreme Court of Minnesota in the case of Ibs v. Hartford Life Insurance Co., 121 Minn. 310. The policy contract there in judgment was issued by the appellant herein and the terms of the policy were in legal effect substantially the same as the terms of the policy contract now considered. It was there held that the policy contract did not authorize the company "to accumulate a mortuary fund out of which to pay death losses that occur in the future." The court said: "It is settled law that an assessment to pay future losses is illegal, unless the power is conferred by

the contract; and we hold that the contract between the insured and defendant cannot be fairly construed as conferring that power. As it is clear that the assessment in question here was not necessary to pay accrued losses, but was in reality levied to pay losses that might be anticipated to occur in the future, it follows that it was unauthorized and could not be made the basis of a forfeiture." [Id., l. c. 315.] Among the authorities cited by the Supreme Court of Minnesota in support of that proposition is the case of Johnson v. Hartford Life Ins. Co., 166 Mo. App. 261 (the same being the opinion of the Kansas City Court of Appeals in the case at bar).

We are aware that the judgment of the Minnesota Supreme Court in the case of Ibs v. Hartford Life Insurance Company, supra, was, later, by the Supreme Court of the United States, reversed. [Hartford Life Insurance Co. v. Ibs, 237 U. S. 662.] But the reversal was on a ground not involved in the case at bar, viz., on the ground that the full faith and credit clause of the Constitution of the United States (Art. 4, sec. 1) had been violated by the Minnesota court in rejecting proof of the record of a Connecticut court in a case known as the Dresser case.

The case at bar was tried below on May 12, 1909, which was prior in time to the entering of the decree in the Dresser case, and the record in the Dresser case was therefore not offered or presented in the trial of this case. Since the record of the Dresser case is in no manner properly raised or lodged in this case, we do not deem it to be within the scope of our review and likewise the Federal question based thereon. Under such circumstances the rule announced by the Supreme Court of the United States in Hartford Life Insurance Co. v. Ibs, supra, should not be applied to this case.

II. It is further contended by appellant that the judgment must be reversed because there was an abandonment by the assured of the policy contract.

In approaching a consideration of this point it must be borne in mind that the sole function of this court, in this, a case at law, is to pass upon matters of error prop-

erly raised in the trial court and passed upon by that court.

We are unable to see wherein this point was presented or passed upon below. It appears that an abandonment was not even pleaded by appellant. "Abandonment of a contract of insurance is an affirmative defense which is waived if not pleaded." [Bacon on Life and Accident Insurance (4 Ed.), sec. 364, p. 760.] The only portion of the answer which comes even near the point is the following:

"Defendant alleges that although the said James T. Johnson lived until the 15th day of January, 1907, or nearly five years after the forfeiture of said policy, by reason of the non-payment of said assessment in July, 1902, he, at no time, considered said certificate or policy in force, but at all times acquiesced in the forfeiture thereof, resulting from the non-payment of said mortality call or assessment."

It will appear at a mere glance that this does not plead an abandonment. Abandonment presupposes an existing valid right which is to be abandoned. Acquiescence in a forfeiture (a cancellation of a right) is quite a different thing from abandoning an existing right. In the former the loss of the right, if any, occurs by reason of the forfeiture, while in the latter the loss of the right occurs by voluntarily and intentionally surrendering an existing right. An abandonment might give cause for forfeiture, but a forfeiture can supply no basis for an abandonment, because when once forfeited the right does not remain to be abandoned.

The question of abandonment is one largely of intention, and the burden of proof is upon the one who asserts it. Upon a proper showing, as a general rule, it becomes a question of fact to be determined by the jury. There was no attempt in this case to even submit that question to the jury—no instruction upon that theory was requested by the appellant.

We therefore rule this point against appellant on the sole ground that the issue was not raised in the trial below.

The judgment is affirmed. All concur.