## LINSCOMB et al. v. GOODYEAR TIRE & RUBBER CO., Inc.

### No. 14569.

United States Court of Appeals
Eighth Circuit.

Oct. 28, 1952.

432

Walter A. Raymond, Kansas City, Mo. (Fenton Hume and Howard W. Grant, Kansas City, Mo., on the brief), for appellants.

Hale Houts, Kansas City, Mo. (Henry Depping, Hogsett, Trippe, Depping, Houts & James, Kansas City, Mo., and Robert Crafts, Akron, Ohio, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action in replevin brought by the Goodyear Tire & Rubber Company, Inc., against Irven E. Linscomb, Gilbert Jackson and Lewis E. Selders to recover possession of a miscellaneous assortment of automobile, truck, bus, and tractor tires and tubes claiming the right to the immediate possession of said property as the owner thereof. It will be convenient to refer to the parties as they appeared in the trial court. Defendants by their answer admitted the jurisdictional allegations of plaintiff's complaint, denied that plaintiff was the owner or entitled to the possession of the property in controversy, denied that they had wrongfully taken or detained the same, and asserted right to possession of the property because of their ownership thereof. As affirmative defenses they alleged that plaintiff had abandoned the property in a building destroyed by fire owned by Adams Transfer and Storage Company, and that they by deed of transfer had succeeded to the title which Adams Transfer and Storage Company had acquired from plaintiff. They also pleaded in the alternative that if plaintiff were not held to have abandoned or transferred the property, plaintiff was estopped from claiming it by reason of the fact that defendants undertook the task of removing same from the building at great expense and labor. By way of counterclaim, they claimed damages for interference with the use and occupancy of the premises while the property was being removed, and compensation for salvaging the same.

At the trial defendants admitted that at and prior to the time of the fire all the property involved was in storage in the Adams building which was under lease to the plaintiff.

The action was tried to the court without a jury and the court found all the issues in favor of plaintiff for the cause of action alleged in its complaint, and found in favor of defendants on their counterclaim and assessed defendants' damages at $3,000.

Prior to March 15, 1950, the Adams Company owned a storage building in North Kansas City, Missouri, which it had rented to plaintiff and in which plaintiff stored automobile and truck tires and tubes. On that date a large part of this building was

destroyed by fire and most of the tires and tubes were either destroyed or damaged. Following this fire, plaintiff salvaged 47 carloads of tires and tubes from the damaged building. This operation consumed approximately two weeks, and at its conclusion, plaintiff did not locate any further undamaged property in the building. At the time of the fire plaintiff had paid its rent for a period beyond the date of occupancy and after its removal of the 47 cars of tires and tubes, the building no longer being suitable for storage purposes, it asked for a refund of rent for the period beyond the date of the fire. Plaintiff and the owner of the building, following negotiations, entered into an agreement by which the owner of the building retained the unearned rent and in consideration thereof agreed to remove from the building the debris resulting from the destruction of the tubes and tires. Subsequent to this agreement and during the month of April, 1950, the owner of the storage building sold it to the defendants and they took possession. Prior to April 1, 1950, plaintiff was in possession of the building as lessee and was in possession of it on March 15, 1950 at the time of the fire. On April 1, it had completed the removal of the 47 carloads of merchandise but there remained great quantities of debris varying in depth from a few inches to several feet, but there were no visible whole tires or tubes on the surface of the debris. A representative of the plaintiff, before leaving the premises, made a visual inspection of the debris and dug into it with a stick for the purpose of detecting the presence of any further salvage. Other inspections were made for plaintiff for like purpose but without results and plaintiff did not know there were any whole tires and tubes buried beneath the debris. Plaintiff thereupon removed its equipment and left the premises.

Prior to the time of the fire, defendants had had wide experience in salvaging operations and they began negotiations looking to the purchase of the damaged property and these negotiations were consummated May 10, 1950, by a transfer to them by warranty deed of the property by the Adams Company. At the time of purchasing the property, defendants did not know there were any good tires and tubes in the debris. In connection with the purchase of the property, defendants had a written contract of sale dated April 20, 1950, which recited that "The improvements on the property have been destroyed by fire and said land with the debris resulting from said destruction is being sold in the present condition thereof." About the middle of April, defendants began salvaging operations and on April 25 they found some good tubes on the fourth floor and ultimately the tires and tubes involved in this action were exhumed by the defendants from the debris. It was not until much of the debris had been removed by defendants that they found what appeared to be merchantable tires and tubes at the bottom of the piles of destroyed tires and tubes. Upon being advised by the defendant of the finding of merchantable tubes and tires, plaintiff claimed ownership and defendants likewise claimed ownership. The court found that plaintiff had no intention of abandoning any tires or tubes which had the appearance of being first class merchandise, and the court likewise found that the plaintiff did not acquiesce in the defendants' claim of ownership of the property here involved. On the evidence produced and considered in connection with all the attending circumstances, the court found that plaintiff was not guilty of lack of due caution in failing to discover the tires buried beneath the debris at the time it vacated the building and that it had no knowledge of the existence of the additional tires and tubes, and did not intend to and did not in fact abandon them. Further facts will be developed in the course of this opinion.

In seeking reversal, defendants in substance contend (1) That the court erred in holding that plaintiff had not abandoned the tires and tubes in question. (2) That the court erred in failing and refusing to find that plaintiff transferred and conveyed all its title and interest in the property in question to Adams Transfer and Storage Company. (3) That under the facts as proven, plaintiff is estopped to claim any interest in the tires and tubes salvaged from the debris in the building involved.

(4) That by negotiations of settlement between plaintiff and Adams Company, the Adams Company acquired title to all the contents of the building and defendants succeeded to that title. (5) That the judgment in favor of defendants on the counterclaim is grossly inadequate.

■ This being a replevin action it was incumbent upon plaintiff to establish its right of possession at the time of the commencement of its action. The action is a possessory one rather than one for the determination of title, but in this case plaintiff bases its right of possession on a claim of ownership and, hence, in the final analysis the question for determination is whether or not plaintiff at the time of the commencement of its action had title to the property involved. Its right of recovery must be bottomed on the strength of its own title rather than the weakness of the title of defendants.

■ As the court found all the controverted issues of fact involved in plaintiff's cause of action in favor of the plaintiff, we must consider its findings as presumptively correct and they cannot be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. As the court found the issues in favor of the plaintiff, we must assume that it resolved all conflicts in the evidence in plaintiff's favor and we must take that view of the evidence which is most favorable to the prevailing party. United States v. Beatty, 8 Cir., 192 F.2d 945; Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735. If when so viewed the findings are sustained by substantial evidence, we must accept them. So far as the facts which we deem determinative of the issues involved herein are concerned, there is little conflict, but the parties do not agree as to the inferences that may be drawn therefrom. It being admitted that the property in controversy was at and prior to the time of the fire the property of plaintiff, the burden of proof that subsequent thereto it lost or was divested of that title was upon defendants. As has been observed, it was the contention of defendants in the trial court, and they renew that contention here, that plaintiff abandoned the property and thereby lost title thereto.

An abandonment must be made to appear affirmatively by the party relying on it, and an intention to abandon will not ordinarily be presumed, and this is particularly true if the conduct of the owner can be explained consistently with a continued claim. Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence. In this case the law of the state of Missouri is applicable. We have recently had occasion to consider the Missouri law on the issue of abandonment. Equitable Life A. S. v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 155 F.2d 776; Rosenbloom v. New York Life Ins. Co., 8 Cir., 163 F.2d 1; Motlow v. Southern Holding & Securities Corp., 8 Cir., 95 F.2d 721. In Equitable Life A. S. v. Mercantile-Commerce Bank and Trust Co., supra [155 F.2d 780], we said that the definition of Missouri courts was to the effect that abandonment "is a fact made up of an intention to abandon, and the external act by which the intention is carried into effect." In Rosenbloom v. New York Life Ins. Co., supra [163 F.2d 8], also determined under the laws of Missouri, we among other things said, "For this court, Judge Johnsen has recently stated the Missouri rule in Equitable Life Assur. Soc. of United States v. Mercantile-Commerce Bank & Trust Co., 155 F. 2d [776] 777, 779–780.

" 'The test of an abandonment of rights under a life insurance policy is the existence of an intent to abandon, and the presumption is that the owner of property intends to preserve his rights.' Wayland v. Western Life Indemnity Co., 166 Mo.App. 221, 148 S.W. 626, 629.

" 'The question of abandonment is one largely of intention, and the burden of proof is upon the one who asserts it.' Johnson v. Hartford Life Ins. Co., 271 Mo. 562, 197 S.W. 132, 136." See also, Pocoke v. Peterson, 256 Mo. 501, 165 S.W. 1017; Hickman v. Link, 116 Mo. 123, 22 S.W. 472; Foster v. Fidelity Safe Deposit Co., 162 Mo.App. 165, 145 S.W. 139; St. Louis Dairy Co. v. Northwestern Bottle Co., Mo. App., 204 S.W. 281. In Pocoke v. Peterson, supra, in holding that there had been no abandonment of a homestead it is said, "Abandonment, as we are dealing with it, is

a composite fact, one element visible, the other sounding in intention, motive. It is a fact made up of an intention to abandon, and the external act by which the intention is carried into effect. These two elements must conjoin and operate together or, in the very nature of things, there can be no abandonment." [256 Mo. 501, 165 S.W. 1021.]

In Foster v. Fidelity Safe Deposit Co., supra, plaintiff, a customer of defendant while on defendant's premises found a sum of money which presumably had been left by another customer. Plaintiff took the money to defendant who sought in vain to find the owner and plaintiff then sued defendant claiming to have been the finder of abandoned property. In the course of the opinion, after observing that property might be of such a character as to make it clear that it had been voluntarily abandoned by the owner, the court said, "But normally, men do not voluntarily abandon their money."

■ A review of the Missouri decisions convinces that an abandonment involves a conscious purpose on the part of the owner of personal property to so treat it as to manifest an intention thereafter neither to use nor to retake it into his possession, and there can be no abandonment absent a composite fact, one element visible, the other sounding in intention, motive. In the instant case there is a total lack of evidence that plaintiff intended to abandon this property. It did not know the property existed and hence could not have intended to abandon it. The court so found and its findings in this regard are sustained by both the direct evidence and the surrounding circumstances.

But it is argued by defendants that plaintiff had ample opportunity to ascertain that there were merchantable tires and tubes buried beneath the debris, and had it exercised proper care it could and would have made that discovery, and hence it should be held to have notice of that which in the exercise of proper care it would have discovered.

The court affirmatively found, "That plaintiff was not guilty of lack of due caution in failing to discover the tires buried beneath the debris at the time it vacated the building." We think it quite immaterial whether plaintiff was negligent in failing to dig down into the debris and find the tires and tubes, as the doctrine of constructive notice is not applicable on the question of abandonment, as there could be no "conscious purpose" of abandoning that which plaintiff did not know existed. So far as defendants were concerned plaintiff was under no duty to discover this buried property. Whether it knew of its existence or not, the property belonged to plaintiff and so long as it did not know that it had been preserved, it could not have a "conscious purpose" of abandoning it.

■ It is next contended that plaintiff transferred its title and interest in the property to the Adams Transfer and Storage Company, and that defendants acquired title from the Adams Company. The transaction by which it is claimed plaintiff transferred its title to the Adams Company had to do with plaintiff's claim of refund of certain rents from the Adams Company. The Adams Company took the position that plaintiff was under obligation to remove all the debris from the storage building resulting from the fire. This controversy was finally compromised by plaintiff releasing its claim for refund of rent in consideration of its being relieved from any obligation to remove the debris and from certain other claimed obligations claimed under the lease. The final offer of settlement which was accepted by the parties was in writing and in the form of a letter from plaintiff to the Adams Company. In this letter plaintiff suggested that the whole controversy might be disposed of "if we (plaintiff) withdrew our claim for a return of the prepaid rental and you (Adams) arranged for the removal of the debris which before destruction was a part of our inventory." The only matters involved between Adams Company and plaintiff was a claim of plaintiff for refund of rent and a claim of the Adams Company that plaintiff should remove from the premises the debris resulting from the destruction or partial destruction of plaintiff's merchandise. There was no mention of merchandise or merchantable tires and tubes and the only contents of the build-

ing referred to was "debris from the destruction or partial destruction of plaintiff's merchandise." Manifestly, it was not the intention of the parties to transfer to the Adams Company any of plaintiff's merchandise, in fact it thereafter removed 47 cars of merchantable tires and tubes. As the Adams Company acquired no title to this property from plaintiff it could, of course, transfer none to defendants. Indeed, it did not purport to transfer any of the merchantable property to defendants. It transferred the improvements "and said land with the *debris* resulting from said destruction." Merchantable tires and tubes could scarcely be classified as debris. On this issue the court found that there had been no transfer of the title to the property in controversy from plaintiff to the Adams Company. On the undisputed evidence there was no such transfer as a matter of law and the court so concluded.

On the question of plaintiff's right to recover on its cause of action there remains to consider the contention that plaintiff was estopped to claim title and right to possession of the property. The court found that there was no estoppel. Defendants did not prove that they did or refrained from doing anything to their prejudice while relying on representations on behalf of the plaintiff, and this we think a complete answer to this contention. New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986; Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S.W. 359. It was shown that defendants asked plaintiff for permission to remove "the debris." Debris, of course, would not include the property here involved. Plaintiff believing that it had removed all of the merchantable property worth salvaging, said that if any merchantable tires or tubes were located, plaintiff would appreciate having its attention called to it. It is significant that defendants did not undertake the task of removing anything from the building upon plaintiff's representations or statements. They in fact went into possession of the building and began the task of clearing it of debris a month before they consulted plaintiff and asked permission to clear the debris from the building. In fact

they began to uncover plaintiff's tires and tubes before consulting plaintiff and had salvaged substantially all of them before that date. The burden of establishing estoppel is, of course, upon the person asserting it, and we find no substantial support in the evidence or circumstances to sustain defendants' contention in this regard.

We think the contention of defendants that the trial court erred in failing to find the reasonable value of the tires and tubes taken under the writ of replevin wholly without merit. The Missouri statute referred to has no application here and there was no occasion to determine that value. Plaintiff took possession of the property under writ of replevin prior to the trial and prosecuted the action with effect so that the court determined that plaintiff was entitled to the possession of the property. There was therefore no reason for assessing its value. In any event failure to do so could not have been prejudicial to defendants. Section 533.110, RSMo 1949, V.A.M.S.

As has been observed the court entered judgment in favor of defendants on their counterclaim in the sum of $3,000. This judgment was awarded defendants as compensation for salvaging plaintiff's property. The court found, "That the defendants incurred extra expense in the salvaging of the said tires and tubes and that the plaintiff is liable to the defendants therefor and that the reasonable value of such services is $3,000." The court also found that, "Defendants are entitled to compensation in the sum of $3,000 for their extra work in salvaging the tires and tubes in question for plaintiff." It is conceded that defendants were entitled to compensation on a quantum meruit basis for salvaging plaintiff's property so that the only question is whether the court's finding as to what constituted reasonable compensation is clearly erroneous. It seems to be the contention of the defendants that they are entitled to recover the value of their services and expenses in clearing the entire building of debris. This was the theory upon which they sought to recover. We think their contention in this regard is untenable. Defendants purchased the damaged property and

proceeded to remove the debris therefrom without any thought or purpose of rescuing any property belonging to plaintiff. This they would have done whether plaintiff had any property in the debris or not; in fact they had been at work clearing the building for a month or thereabouts before discovering plaintiff's property. The uncovering of this property was a mere incident to the clearing of the building and one of defendants so testified. The trial court in passing on this question among other things said:

"Certainly they are not entitled to full compensation, what it cost to clean it up because this was simply an incident, and undoubtedly there were hundreds and hundreds of tons, maybe thousands of tons of debris that had to be moved out of there that were in addition to these tires, that had to be moved out anyhow."

The rights of the defendants were analogous to the rights of a finder of lost property to compensation from the owner for his necessary and reasonable expenses incurred in recovery and preservation of the property. 36 C.J.S., Finding Lost Goods, § 4, p. 771. They were not, however, entitled to the value of all the services for clearing out this building, but only to the value of the proportion of the expense and labor incurred or the extra expense and labor incurred in recovering these tires and tubes. Kirk v. Smith, 48 Mont. 489, 138 P. 1088. Although the defendants had the burden of proving the value of their services in salvaging the tires and tubes, as distinguished from the cost or value of services in clearing the building, they relied wholly upon proof of the total cost of clearing the building and failed to offer any evidence as to the reasonable value of their services for salvaging the tires and tubes. However, there was evidence offered by plaintiff on this subject. Mr. McGuckin, who had had experience in salvaging the 47 cars of tires and tubes, testified as to the value of defendants services in this regard.

The judgment on defendants' counterclaim is sustained by substantial evidence and the finding of the court on this issue is certainly not clearly erroneous. The judgment appealed from is therefore affirmed.