GRAFEMAN DAIRY COMPANY v. NORTHWESTERN BANK, and WILLIAM A. BLACK, and M. C. SCHULTE, Trustee, Appellants.

Court en Banc, October 8, 1926.

**1. CORPORATE MORTGAGE: Invalid Execution: Without Authority of Directors.** A deed of trust, purporting to have been executed by a corporation, if it was not executed by the authority of either the company's stock-

holders or board of directors, is insufficient to convey the title of the real estate in it described.

2. **ESTOPPEL: Pleading: Necessary Facts: Intendment: No Demurrer.** Estoppel is an affirmative defense and must be pleaded to be available, and the essential facts constituting equitable estoppel must be set up, and nothing can be supplied by inference or intendment, and beyond the pleaded facts the court cannot go, and where there is ground for inference or intendment it will be considered as against and not in favor of estoppel. But notwithstanding the plea is not sufficient because the essential elements of equitable estoppel are not set up, if no objection is made to it by demurrer or motion to make more definite and certain, it will be held good to the extent of the facts alleged.

3. ————: **Corporation: Acquiescence of Directors.** In determining whether a corporation is estopped on equitable considerations to deny the validity of notes and a deed of trust upon real estate executed in its name by its president, the board of directors is to be considered as the corporation, and to estop the corporation a majority of the directors must have had knowledge of the facts concealed or acquiesced in which if known by them would in law establish estoppel.

4. ————: ————: **Acts of President: To Secure Own Debt: Knowledge and Acquiescence of Directors: Retention of Proceeds: Suit to Cancel.** A deed of trust upon real estate executed by the president of a corporation in its name to a bank to secure notes likewise executed by him in its name, without consideration to the corporation and without authorization by its board of directors or stockholders, although its certificate of acknowledgment contains a recital that it "was signed and sealed in behalf of said corporation by authority of its board of directors" and in the body there is the further recital that "this deed of trust has been duly authorized by a vote of the stockholders of said party of the first part, and the officers thereof have been, by its stockholders, instructed to execute said above described notes and this deed of trust securing the same," if the cashier of the bank, by whom it was accepted, was a stockholder of the corporation and knew that said recitals were false, will be canceled upon a showing that a majority of the directors had no knowledge of its execution until long afterwards, and that the proceeds of the notes secured by it were absorbed by the president, with the knowledge of the cashier, in taking care of his individual obligations to the bank, and that the corporation neither received nor retained any of said proceeds.

5. ————: ————: **Ordinary Act of President.** Where the only unauthorized act of the president of the plaintiff corporation of which the defendant bank complains is his execution and delivery of a deed of trust on its real estate sought to be canceled, estoppel does not arise from the corporation's conduct in permitting him to transact and manage its ordinary business and to draw and deliver checks and other commercial paper usually incident to such business.

6. ————: ————: **Secretary: Attesting Deed of Trust: Agent.** Neither the president nor the secretary of a corporation acts within the scope of his authority in executing in its name, without the knowledge or consent of its board of directors or stockholders, a deed of trust on its real estate; and the corporation is not estopped by the act of the secretary in attesting the unauthorized execution of a deed of trust by its president; and if it be claimed that the secretary acted as agent, then his act must be tested as one of agency, and must come within the scope of his agency. Besides, in this case, outside of said one unauthorized act, the record does not show that the secretary did or said anything to mislead the bank or to induce it to accept the deed of trust as security.

**7. RATIFICATION: Acquiescence: Estoppel by Silence: Pleading.** Ratification implies a contract intentionally assented to, and that the party to it assented to be bound by it; and before a corporation can be held to have ratified an unauthorized deed of trust, through the silence and apparent acquiescences of its board of directors, ratification must be pleaded. But even if a plea of benefits received and retained be treated as ratification as well as estoppel, or as estoppel by silence, or as estoppel by laches, the holder of an authorized deed of trust must fail where the corporation received no consideration therefor, the knowledge that it had been executed in its name did not come to the knowledge of the board of directors until after the corporation had passed into the hands of a receiver and the death of the president who had executed it to secure his individual debts, and the holder knew all the facts from the beginning and refrained from doing anything to his prejudice.

**8. ———: Acquiescence: Estoppel by Silence: Pleading: General Denial: Liability.** The facts relied upon to show equitable estoppel must be specifically pleaded and proved by defendant unless they appear from the case made by plaintiff. A general denial puts in issue the facts pleaded in the petition, but cannot be used as a basis for affirmative liability; the facts from which the law draws the conclusion of non-liability must be pleaded in the answer when they are not stated in the petition. Whenever defendant intends to rest his defense upon any fact not included in the allegations necessary to support plaintiff's case, he must plead it. Neither ratification nor acquiescence can, at best, be more than part of estoppel. But even if defendant, under his plea of facts amounting only to estoppel, were permitted to show facts which he claims constitute ratification and acquiescence, still said defense cannot be allowed if those facts constitute nothing more than estoppel, and his plea of estoppel is not sustained by the facts in evidence. [On Motion for Rehearing.]

Corpus Juris-Cyc. References: **Corporations,** 14aCJ, Section 2229, p. 371, n. 59, 61 New, 65; Section 2239, p. 383, n. 11; p. 386, n. 28; Section 2241, p. 390, n. 48; Section 2653, p. 658, n. 55, 56. **Estoppel,** 21 C. J., Section 8, p. 1060, n. 14; Section 116, p. 1113, n. 52; p. 1114, n. 53, 54, 55; Section 117, p. 1115, n. 57; Section 248, p. 1242, n. 92; Section 260, p. 1247, n. 46; p. 1248, n. 47, 48, 49.

Appeal from Circuit Court of City of St. Louis.—*Hon. Frank Landwehr,* Judge.

AFFIRMED.

*Lubke & Lubke* and *Leahy, Saunders & Walther* for appellants.

(1) Knowledge acquired by an officer of a corporation in the discharge of his official duties is knowledge of the corporation. Bank v. Schauenberg, 38 Mo. 228; Virginia Mining Co. v. Clayton, 233 S. W. 215; Griffith v. Supreme Council, 182 Mo. App. 644. (a) The recording of the deed of trust in question on May 25, 1917, imparted notice to the officers and directors of the plaintiff company. R. S. 1919, sec. 2199. (b) Where a corporation entrusts to an officer or agent the general management of its business, it is bound by his acts even though he goes beyond his delegated powers. And the failure of the corporation to promptly repudiate any unauthorized acts will amount to an acquiescence in and ratification of the same. St.

Josephine Hospital v. Modoc Realty Co., 270 S. W. 638; Berthold & Jennings Lumber Co. v. Texas H. L. Co., 209 S. W. 591; Currie v. Bowman, 25 Ore. 363; Cotton Co. v. Grocery Co., 204 Mo. App. 427; Merchants Bank v. State Bank, 10 Wall. 604; Coal Co. v. Hydraulic Mining Co., 207 S. W. 266; Dauglade Co. v. Land Co., 190 S. W. 35. (2) The plaintiff received from the defendant b·k the full consideration for the notes and deed of trust in question and retains the same and has never offered to return the same to the bank. So long as the plaintiff retains the money and property received by it from the defendant bank it fully ratifies the notes and deed of trust and cannot repudiate the same and have them cance⊥. .. Auten v. Ry. Co., 104 Fed. 395; Big Creek Iron Co. v. American L. & T. Co., 127 Fed. 625; Shafer v. Spruks, 225 Fed. 480; Magnolia Compress Co. v. Cash Register Co., 201 Mo. App. 201; Mining Company v. Taylor, 247 Mo. 1; Parsons v. Guarantee Inv. Co., 64 Mo. App. 32; Love v. Metropolitan Church, 184 Ill. App. 102; Weathersby v. Lumber Co., 7 A. L. R. 1440, 107 Tex. 474, and notes pp. 1447, 1449, 1473, 1477. (3) The notes and deed of trust in question were also ratified by the affirmative acts of the plaintiff after they were executed and delivered and hence are valid and binding upon the plaintiff. Singer v. Railroad Co., 6 Mo. App. 427; First Natl. Bank v. Fricke, 75 Mo. 178; Chouteau v. Allen, 70 Mo. 290; Ferguson v. Venice Tr. Co., 79 Mo. App. 352; Smith v. Richardson, 77 Mo. App. 422.

*Sam B. Jeffries, Arthur E. Simpson* and *Paul F. Plummer* for respondent.

(1) These findings are supported by substantial (if not in fact by conclusive) evidence and should be deferred to by this court. Carpenter v. Kendrick, 299 Mo. 95; State ex rel. v. Public Serv. Comm., 271 Mo. 155; New England Loan Co. v. Browne, 177 Mo. 412; Snell v. Harrison, 83 Mo. 651; Parker v. Roberts, 116 Mo. 657; Mathias v. O'Neill, 94 Mo. 520; Jamison v. Bagot, 106 Mo. 240. (2) The deed of trust is void at law and can only be sustained by defendants' proving equities constituting estoppel against plaintiff. Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311. (3) Defendant bank accepted the deed of trust with full knowledge that it had not been authorized by the Dairy Company's board of directors. Not being deceived, no estoppel exists in its favor. Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311; Austin v. Loring, 63 Mo. 19; Bales v. Perry, 51 Mo. 449; Spence v. Renfro, 179 Mo. 417; In re Doe Run Lead Co., 223 S. W. 609; Gentry v. Gentry, 122 Mo. 202; Garesche v. Levering Inv. Co., 146 Mo. 436. (4) The evidence shows that plaintiff received no consideration for the deed of trust. Even were it

shown that the Northwestern Bank credited money to plaintiff's account in connection with the pledge of the deed of trust, yet an estoppel would not arise without a further showing that plaintiff received or utilized the money represented by such credits with full knowledge that it had been obtained by a pledge of such deed of trust. Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311; Murray v. Nelson Lbr. Co., 143 Mass. 250; Tracy v. Guthrie County A. S., 47 Iowa, 27; Mining Co. v. Stevenson, 5 Nev. 224; Okmulgee Coal Co. v. Hinton, 218 Pac. (Okla.) 319; Caldwell v. Mutual Res. Fund Assn., 65 N. Y. Supp. 826; Thompson v. Des Moines D. P., 112 Iowa, 628; Giebler Mfg. Co. v. Kranenburg, 102 App. Div. 471.   (5) The knowledge of an officer of a corporation can be imputed t  the corporation only where the officer acquiring the knowledge is one who has authority to deal for the corporation in reference to the specifi. matter which the knowledge affects.   Hyde v. Larki~, 35 Mo. App. 365; Kearney Bk. v. Froman, 129 Mo. 427; St. L. & St. C. Bridge Co. v. Union Electric, 268 S. W. 404; Williams v. Dittenhoefer, 188 Mo. 134; Florence v. DeBeaumont, 101 Wash. 356.   (6) Constructive knowledge of what the records showed in the face of proof positive that there was no actual knowledge cannot be made the basis of estoppel.   Starr v. Bartz, 219 Mo. 47.   (7) Ratification by a corporation can exist only where such ratification is by the officers or agents who have the power to perform the act claimed to be ratified.   Since a corporate mortgage can be executed only by power of the board of directors, a ratification of a previously issued unauthorized mortgage can be effected only by the directors.   Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311; Murray v. Nelson Lbr. Co., 143 Mass. 250; Tracy v. Guthrie County A. S., 47 Iowa, 27; Mining Co. v. Stevenson, 5 Nev. 224; Okmulgee Coal Co. v. Hinton, 218 Pac. 319; Caldwell v. Mutual Res. Fund Assn., 65 N. Y. Supp. 826; Thompson v. De Moines D. P., 112 Iowa, 628; Giebler Mfg. Co. v. Kranenburg, 102 App. Div. 471.

*Lubke & Lubke* and *Leahy, Saunders & Walther* for appellants in reply.

(1) The general rule respecting ratification by a corporation is stated in 14a C. J. 375, 384, 387. The foregoing statements of the law on this subject are quoted with approval by this court in the recent case of Josephine Hospital Corporation  Modoc Realty Co., 270 S. W. 638. In that case a deed was executed by the president of the corporation without authority from the board of directors and it was held upon the authority of Grafeman Dairy Company v. Bank, 290 Mo. 312 (this case on the former appeal) that the deed so made was insufficient to convey legal title. The court, however, held further

that the hospital corporation was estopped by the delay, neglect and laches of its board of directors to say that the deed was unauthorized and insufficient to convey title and that their directors thereby ratified the deed.    (a) The deed of trust was recorded on May 25, 1917, and the recording of the deed was in itself notice to all of the directors. This court in the Josephine Hospital Corporation v. Modoc Realty Co. case held that the recording of the deed gave notice of the purported conveyance to all. the world, including the directors of the company, and that is the rule as laid down in 14a C. J. 375.    (b)    When Kessler made his report of the condition of the Company as of July 31, 1917, and which report is dated September 19th, he stated under the heading "Comments on Balance Sheet Items," the following: "According to information received from the Northwestern Bank, real estate and buildings are encumbered by a mortgage for $50,000 securing a loan of like amount at said Bank." And on the balance sheet in said report there is listed under "Current Liabilities—Notes Payable —secured by deed of trust, $50,000." A copy of this audit was delivered to the Northwestern Bank.    It is true that Mr. Kessler testified that he delivered all of the copies of the audit containing the statements aforesaid to William Grafeman, but the report is addressed to William Grafeman, president Grafeman Dairy Company, and the directors knew, or if they had exercised any diligence in the performance of their duties as directors would have known, that the audit was being made and would have asked to see the report.    When the suit for a receiver was brought by John H. Vette, a stockholder, based upon the charge of malfeasance on the part of the directors, Kessler made another audit in which the deed of trust in question was again reported as a liability, and that report became the basis for the inventory filed by the receiver.

ATWOOD, J.—This is an equity suit, here for the second time, instituted by respondent, as plaintiff, in the Circuit Court of the City of St. Louis, to cancel a deed of trust and five notes, one being for the principal sum of $50,000 and the other four being for the sum of $1,375 each, secured thereby, and to restrain negotiation of the notes and foreclosure of the deed of trust pending judgment therein.    The first judgment in the circuit court dismissed plaintiff's bill and granted the relief prayed in defendant bank's cross-bill.    On appeal this judgment was reversed and the cause remanded by this Court en Banc, our decision being reported in 290 Mo. 311.    On the second trial the judgment of the circuit court was for plaintiff, granting the relief prayed in its bill, and against defendant bank on its cross-bill, said judgment and finding being that said deed of trust and notes "are not valid obligations of the plaintiff and were executed by Wil-

liam Grafeman without the authority of the plaintiff, and that plaintiff did not receive any consideration therefor, and that defendant Northwestern Bank accepted said deed of trust and notes as collateral security with knowledge that said deed of trust and notes had been authorized neither by the board of directors nor the stockholders of the plaintiff, and that the money paid out by the bank in connection with said notes and deed of trust was utilized by William Grafeman for his personal use and benefit, and that the plaintiff had no knowledge of the making of said deed of trust until long after its execution and long after the payment of the money in connection therewith by the Northwestern Bank, and that said deed of trust was obtained by said Northwestern Bank primarily as security for a past due indebtedness, and that said deed of trust and five notes above described are null and void, and that said deed of trust is not a valid lien against the real estate therein described.

"And the court doth further find in favor of the plaintiff on the cross-bill of defendant Northwestern Bank, and on each count thereof, and doth find that the defendant Northwestern Bank is not entitled to the relief prayed for in its cross-bill, nor to any relief.

"Whereupon, it is by the court ordered, adjudged and decreed that the defendants be, and they hereby are, and each of them hereby is, perpetually enjoined and restrained from negotiating or transferring said notes or any of them, and from proceeding under said purported deed of trust to foreclose, sell, convey, or take possession of said real estate therein described, or any part thereof, and said five promissory notes and said deed of trust are hereby declared null and void.

"And it is further ordered, adjudged and decreed that defendant Northwestern Bank forthwith deliver up to the clerk of this court the said five promissory notes and deed of trust, which shall thereupon be by said clerk cancelled, and that the record of said deed of trust in Book 3016, page 537, of the Recorder's Office of the City of St. Louis, Missouri, be for naught held, and that defendant Northwestern Bank take nothing by its cross-bill, and that the costs of this proceedings be adjudged against the defendant Northwestern Bank, and that execution issue therefor."

The petition, aside from conventional allegations, states that M. C. Schulte, as trustee, is about to foreclose the deed of trust in question, and that the real estate therein described is of the value of $50,000 or more; that defendants claim said deed of trust was given to secure five alleged negotiable promissory notes, each dated April 19, 1917, payable to William H. Oonk, one being for $50,000 due two years after date, and the remaining four being for $1,375 each and due in six, twelve, eighteen and twenty-four months, respectively, from date thereof, all purporting to be signed on behalf of plaintiff by

William Grafeman, as president; that defendants William A. Block and Northwestern Bank claim to be the lawful owners and holders of said notes and deed of trust; that William H. Oonk, the payee named in said notes, is in the employ of defendant bank and transferred and assigned said notes and deed of trust to defendant bank without receiving any consideration therefor; that defendant Schulte was on April 17, 1917, and still is in the employ of defendant bank and is not a disinterested party and is not a proper person to act as trustee under said deed of trust; that said deed of trust and said notes were never executed by plaintiff, and were never authorized either by its board of directors or by its stockholders; that plaintiff never received any money or other thing of value from the said William H. Oonk or any other person on account of said notes and deed of trust; that plaintiff never received the consideration alleged in said notes and deed of trust, and if the said William Grafeman executed the same he did so on his own account and without the authority, knowledge or consent of plaintiff, and that defendants well knew all such facts at the time they acquired their alleged interest and ownership therein.

The amended separate answer of defendant bank now before us admits plaintiff's conventional allegations, and further admits that defendants claim that said deed of trust was given to secure said five notes, that defendant bank claims to be the lawful owner and holder of the same, that William H. Oonk transferred and assigned the same to said bank, and that he and defendant Schulte were at the date of the making and transferring of said notes and deed of trust employees of defendant bank, and that defendant Schulte was still in the employ of said bank when this suit was commenced. All other allegations of plaintiff's petition are denied generally. Further answering defendant bank alleges that plaintiff was the owner in fee simple on April 19, 1917, of the real estate described in said deed of trust and was occupying and using the same in the conduct of its business; that on said date plaintiff executed said notes and deed of trust; that said notes and deed of trust were indorsed without recourse by the payee, and were on May 17, 1917, negotiated and delivered to defendant bank by plaintiff, and pledged by plaintiff to defendant bank by its written contract of pledge as security for the payment by plaintiff at its maturity of another promissory note executed and delivered May 17, 1917, by which plaintiff, for value received, promised to pay to the order of this defendant, the sum of $50,000 three months after date with interest from maturity at the rate of five and a half per cent per annum; that when the notes described in said deed of trust and the note for $50,000 dated May 17, 1917, and said pledging contract, were negotiated and delivered by plaintiff to defendant bank, plaintiff received from defendant bank full value therefor; that thereafter plaintiff's said note for $50,000 dated May 17, 1917, became due,

and at plaintiff's instance was renewed for another term of three months; that plaintiff thereafter defaulted in the payment of said note, and on September 13, 1918, said note and all interest accrued thereon prior thereto remained wholly unpaid; that in accordance with the provisions of said pledge contract defendant bank on said date foreclosed said deed of trust and the five notes described in and secured thereby and defendant bank purchased the same at said foreclosure sale and is now the owner thereof; that two of the interest notes secured by said deed of trust had then matured and no part thereof had been paid, and defendant bank requested defendant Schulte, trustee named therein, to make a foreclosure sale of the property described in said deed of trust, and said trustee was making publication of said sale when restrained by the temporary injunction issued on plaintiff's application; that if as alleged in the plaintiff's petition, the said William Grafeman was without express authority to execute in behalf of and in the name of the plaintiff the deed of trust hereinbefore mentioned, pledged by the plaintiff to this defendant, as hereinbefore alleged, then the plaintiff, by reason of its conduct in receiving from this defendant the proceeds of the pledge of said deed of trust as aforesaid and retaining the same and in permitting said William Grafeman to transact and manage for it its affairs and authorizing and empowering said William Grafeman to draw and deliver checks and other commercial paper in the name of plaintiff and to withdraw the funds of plaintiff deposited to its credit with this defendant by checks signed by said Grafeman for the plaintiff, is estopped from questioning the validity of said deed of trust; that plaintiff has never restored or offered to restore to this defendant the consideration for said note of May 17, 1917, pledging said deed of trust and the notes secured thereby, or for the renewal note of August 17, 1917, and therefore cannot maintain this action. By way of counterclaim defendant bank asks judgment and a general execution on the two past due interest notes of $1,375 each, and for judgment foreclosing plaintiff's equity of redemption in the real estate described in said deed of trust, and that a special execution be issued in accordance with the statute relating to mortgages against said real estate for the total sum found to be due this defendant on the notes in said deed of trust described.

Defendant Block filed answer expressly disclaiming any interest in the subject-matter of the suit, and defendant ˝ːhulte adopted the above answer of defendant bank.

Plaintiff filed reply denying that it ever executed or delivered the alleged notes, deed of trust, or pledge; and again alleging that if William Grafeman did sign and dːiver said notes, deed of trust and pledge, he did so on his own behalf and responsibility and without authority and not in behalf of plaintiff; that neither the stock-

holders nor the directors of plaintiff authorized him to execute or deliver said notes, deed of trust and pledge, and that plaintiff never received any consideration for or on account thereof; that defendant bank knew, or reasonably could have known, before and at the time of paying whatever, if any, consideration it paid on account thereof, that said notes, deed of trust and pledge were not made, signed or delivered on behalf of plaintiff, nor for its corporate purposes, and that neither the stockholders nor the directors of plaintiff authorized the execution or delivery of said notes, deed of trust or pledge; and that neither plaintiff, its directors, nor its stockholders have ever ratified said alleged notes, deed of trust or pledge, or any of them.

On the first appeal we held that the deed of trust was executed without the authority of plaintiff's board of directors and was insufficient to convey the legal title to the real estate therein described. We further ruled that certain evidence offered by plaintiff was erroneously excluded by the trial court, and that judgment was reversed and the cause remanded. The evidence at the former trial, our rulings thereon, and the evidence at the second trial, will be hereafter referred to insofar as the same are before us and appear pertinent to the issues involved.

I.   It is not contended that the deed of trust was executed by authority either of plaintiff's stockholders or of its board of directors. It, therefore, was insufficient to convey title to the real estate therein **Invalid Execution.** described. [Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311; Josephine Hospital Corporation v. Modoc Realty Co., 270 S. W. (Mo.) 638; Union National Bank v. State National Bank, 155 Mo. 95.]

II.   Respondent says that defendant bank's "counterclaim does not plead equitable estoppel." On the former appeal we found that defendant bank's answer "made the conventional admissions as to the corporate character of the parties, the acquisition and ownership of the notes and deed of trust securing them, the proceedings taken **Pleading Estoppel.** for foreclosure, and denied all other allegations," and that the answer and the bank stood "solely upon the legal title acquired by the deed." Notwithstanding its own failure to plead estoppel defendant bank insisted that "if the plaintiff has shown by its own evidence that it ought not, in equity, to have the relief demanded in its petition, it is the duty of the court to withhold it even though it be not pleaded as an affirmative defense." We adopted this view, examined the evidence, found that plaintiff was not estopped on the record then before us, ruled on the exceptions preserved and reversed and remanded the cause, observing that as defendant bank had pleaded and tried the case on the theory that

the deed of trust in issue was sufficient to convey the legal title to the land "we do not think the interest of justice will suffer from a full trial of the real issue as we have stated it."

Estoppel is an affirmative defense and must be pleaded. [Swinhart v. Railway, 207 Mo. l. c. 437.] Defendant bank's amended answer, now before us, adopted by defendant Schulte and embracing said counterclaim, pleads, among other things, as heretofore indicated "that if as alleged in the plaintiff's petition, the said William Grafeman was without express authority to execute in behalf of and in the name of the plaintiff, the deed of trust hereinbefore mentioned, pledged by the plaintiff to this defendant, as hereinbefore alleged, then the plaintiff, by reason of its conduct in receiving from this defendant the proceeds of the pledge of said deed of trust as aforesaid and retaining the same and in permitting said William Grafeman to transact and manage for it its affairs and authorizing and empowering said William Grafeman to draw and deliver checks and other commercial paper in the name of plaintiff and to withdraw the funds of plaintiff deposited to its credit with this defendant by checks signed by said Grafeman for the plaintiff, is estopped from questioning the validity of said deed of trust." Under our holding in Blodgett v. Perry, 97 Mo. 263, and similar cases, this would not be a sufficient pleading in that the essential elements of equitable estoppel are not set up, but, no objection having been made to the pleading by demurrer or motion to make more definite and certain, we rule, on authority of Olden v. Hendrick, 100 Mo. l. c. 540, that it is good to the extent of the facts pleaded. But beyond the pleaded facts we are not at liberty to go even in an equity case. Estoppel must be pleaded with particularity and certainty. [Bigelow on Estoppel (6 Ed.) p. 764.] Every essential fact must be set forth, for nothing can be supplied by inference or intendment, and where there is ground for inference or intendement, it will be against and not in favor of the estoppel. [21 C. J. 1247.] Under Section 1274, Revised Statutes 1919, any pleading may be amended after the evidence is in to conform to the proofs, but even in an equity case in which general relief is asked the relief granted must be limited to the facts set out in the bill or answer. [Newham v. Kenton, 79 Mo. l. c. 385.] "Not only must the estoppel be pleaded, but this must be done with more certainty than is requisite, or will suffice in ordinary defenses." [Central National Bank v. Doran, 109 Mo. l. c. 51.] Of course, the burden is on the party who sets up the estoppel to make out the facts on which it rests. [Petring v. Chrisler, 90 Mo. 649.] On retrial defendants had the right to plead and prove estoppel against plaintiff if they could, and respondent evidently so construes the opinion because the following language appears in its brief: "Upon an appeal by plaintiff from this judgment the Supreme Court reversed the judgment and held

the deed of trust was void at law, but that if defendants could show an equitable estoppel against plaintiff, then plaintiff should not prevail. The cause was remanded for a new trial in order that defendants might produce such evidence as they could in an attempt to show whether or not such estoppel existed (290 Mo. 311). A second trial was then had.''

Subject to the foregoing restrictions estoppel is in the case, and the facts pleaded as estopping plaintiff from questioning the validity of the deed of trust are, plaintiff's conduct in (1) receiving from defendant bank the proceeds of the pledge of said deed of trust and retaining the same, and (2) permitting William Grafeman to transact and manage plaintiff's affairs and empowering him to draw and deliver checks and other commercial paper in its name. We will consider these grounds and the proofs relating thereto in their order.

III.   (1)   Appellants rely chiefly, and properly so, on the alleged ground that plaintiff received and retained the proceeds of the pledge of the deed of trust and collateral notes to defendant bank. It appears that on May 17, 1917, William Grafeman, purporting to act in his capacity as president of the Grafeman Dairy Company, executed and delivered to defendant bank a promissory note due three months after said date in the principal sum of $50,000, bearing interest from maturity at the rate of five and one-half per cent per annum, and payable to said bank. This note was signed, ''Grafeman Dairy Co., by Wm. Grafeman, Prest.'' Attached to and delivered with this note was a written agreement or pledge, which William Grafeman executed at the same time and in the same way as said note, purporting to pledge to said bank and assigns as collateral security for said note and all ''other liabilities, actual and contingent, to said bank now existing or which may hereafter arise'' the five notes secured by the deed of trust in controversy. One of these notes was given in the principal sum of $50,000, due two years after date, and the other four in the principal sum of $1,375 each, due in six, twelve, eighteen and twenty-four months, respectively, from date, all of said notes payable to the order of William H. Oonk, dated April 19, 1917, bearing interest at the rate of eight per cent per annum from maturity, and signed Grafeman Dairy Co., by William Grafeman, Prest.'' The deed of trust bore the same date and was signed in the same way as the notes. The certificates of acknowledgement bore date of May 15, 1917, and contained the recital that ''said instrument was signed and sealed in behalf of said corporation, by authority of its board of directors,'' and the body of the instrument contained the recital that ''this deed of trust has been duly authorized by a vote of the stockholders of said party of the first part, and the officers thereof have been, by its

*Facts Establishing Estoppel.*

stockholders, instructed to execute said above described notes and this deed of trust securing same.'' This deed of trust and the five notes secured thereby, all previously signed, were on May 17, 1917, handed by William Grafeman to Joseph F. Obernier, who at that time was cashier of defendant bank. Mr. Obernier took Mr. Grafeman to Henry H. Luebbert, who was assistant treasurer of defendant bank at that time, handed him the deed of trust and the five notes and requested him to make out the above ninety-day note for $50,000 and accepted plaintiff's check for $40,000 and interest in payment of three notes, one for $20,000 dated May 7, 1917, payable on demand, one for $10,000 dated April 15, 1917, due May 15, 1917, and one for $10,000 dated April 20, 1917, payable on demand previously given by William Grafeman as president of the Grafeman Dairy Company to said bank, and personally indorsed by William Grafeman. The $20,000 note and one $10,000 note were the last of many renewals of notes originally given some years previously. It should be noted that William Grafeman did not deliver the deed of trust and the five collateral notes until defendant bank agreed to make an additional loan of $10,000. The record does not disclose just when or under what circumstances these five collateral notes were indorsed by the payee, William H. Oonk, who was also an employee of defendant bank. Plaintiff's pass book issued and kept by defendant bank was not introduced in evidence, but witnesses Manneback and Kessler, testifying for plaintiff, said that it showed a credit of $50,000 as a discount for plaintiff under date of May 17, 1917, and the auditor testified that this was the only entry on any of plaintiff's books showing that plaintiff received $50,000 from any source in the month of May, 1917. Defendant introduced in evidence a cancelled check signed. "Grafeman Dairy Company, Wm. Grafeman, Prest,'' dated May 17, 1917, payable to the order of defendant bank in the s·:m of $40,-071.80, which, with the sum of $48.88 in cash paid by William Grafeman out of his own pocket, witness Luebbert, testifying for defendants, said paid off plaintiff's three previous notes in full. The proceeds arising from the pledging of the five collateral ˀ ₙtes, therefore, were the immediate taking up of plaintiff's three previous notes to defendant bank, aggregating the principal sum of $40,000, and the making of an additional loan of $10,000.

Did plaintiff Grafeman Dairy Company receive and retain these proceeds so that it is now estopped to question the validity of the deed of trust? On the former appeal we said (Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. l. c. 331) : ''That the corporation, through its boards of directors, may be estopped by equitable considerations from denying its authorization, results from the fact that the board of directors is, in this respect, the corporation.'' We must look, there-

fore, to the conduct of plaintiff's board of directors which consisted of five members.

Equitable estoppel is defined in 21 Corpus Juris, 1113-4-5 as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, repre sentations, or admissions, or by his silence when he ought to speak out, *intentionally or through culpable negligence induces another to believe certain facts to exist* and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly con trives to put another in a dilemma and to subject him to necessity and distress and he acts one way, it is not for the wrongdoer to insist that he should have acted another way."

From the foregoing it is apparent that knowledge of the facts con cealed or apparently acquiesced in on the part of the person claimed to be estopped must appear, and we have many times so held. [Acton v. Dooley, 74 Mo. l. c. 69; Blodgett v. Perry, 97 Mo. l. c. 273; Gentry v. Gentry, 122 Mo. l. c. 221; DeLashmutt v. Teetor, 261 Mo. l. c. 442.]

The misrepresentation in this case was that the deed of trust and notes were authorized by plaintiff's stockholders and board of direc tors. Defendant bank's cashier Obernier, who received the deed of trust and notes, was a stockholder in plaintiff corporation and must have known that no authority had been given by the stockholders. and, outside of William Grafeman and C. C. Mannebach, who were directors, it does not appear that any other director knew anything about the deed of trust at the time of its execution and delivery. Ap pellants claim that William Grafeman, Jr., who was also a director, knew of the execution and delivery of the deed of trust and of the misrepresentation it contained. When witness Mannebach, testifying for plaintiff, was questioned as to who was present at the time he attested the deed of trust at the office of the Grafeman Dairy Company his answer was, "William Grafeman," and the following examination ensued:

"Q. Anyone else? A. His son. I guess, was.

"Q. Had you any discussion with any of the directors or officers of the company with reference to this deed of trust besides William Grafe man? A. No.

"Q. Do you know whether or not young Mr. Grafeman was there at the time you attested it? A. Well, I think he took me down to Mr. Hemmelmann's office in his car. I took this down to Mr. Hemmelmann's office and asked him if it was all right for me, as secretary, to attest this deed, and he said it was done right along. . . .

"Q. Did young Mr. Grafeman take any part in the discussion with reference to the signing of this deed of trust by you? A. No.

"Q. Do you know whether or not he saw you sign it? A. I couldn't say; I don't know whether he did or not. He took me down to Mr. Hemmelmann's office and I brought the deed back then and took it up to my office and signed it."

He was cross-examined on this point as follows:

"Q. Now you say when this deed of trust was brought to you to be attested Mr. William Grafeman, Jr., was there at the same time that his father was? A. Well, no, he wasn't there. He took me down— he had a Ford car and he was in the office, but he was not in my office; I had a private office, and Mr. Grafeman had an office, and then the general office was the balance of the building; and the only one in my office was William Grafeman, and when I would not sign it, why, the other one was called in and asked to take me down—.

"Q. To see Mr. Hemmelmann about the matter? A. That is right.

"Q. Was young Mr. Grafeman there with you when you talked to Mr. Hemmelmann, or did you talk to Mr. Hemmelmann without him being there? A. Well, I went to his office; I don't know whether he came in or not.; and then I asked for Mr. Hemmelmann and I was ushered into his office. I think no one was there besides Mr. Hemmelmann and myself in his office."

Defendants did not put William Grafeman, Jr., on the stand, and it is not claimed that the other directors had actual knowledge of the existence of the deed of trust prior to November 12, 1917, when plaintiff's affairs were placed in the hands of a receiver. Upon this state of the record we must rule that defendants failed to carry the burden of showing such knowledge on the part of a majority of the board of directors.

There is even less proof that a majority of the board of directors had actual knowledge, prior to the receivership or even until after William Grafeman's death in December, 1917, that the five notes secured by the deed of trust had been negotiated and pledged to defendant bank, that a $50,000 discount entry had been made as of date of May 17, 1917, in plaintiff's pass book, or that defendant bank was claiming security under the deed of trust. It is true that witness Mannebach, who was plaintiff's secretary and a director, stated his own impression and conduct at the time the deed of trust was being prepared as follows:

"Q. And your idea was that Mr. Grafeman wanted to raise money for himself? A. Absolutely, for himself.

"Q. That was your idea? A. That is all he was doing. . . .

"Q. And you were convinced that what Mr. Grafeman intended to do was to get money from the Northwestern Bank in the name of the company and then appropriate it to his own use; is that right? A. No; he was broke; he was practically broke, and he needed money; he had to have some money.

"Q. And you knew that? A. Yes, I knew that. He had been broke more than once.

"Q. And you thought what he would do was to take this obligation of the company to the Northwestern Bank . .d upon the strength of it get money in the name of the company, which he would then check out for his own use? That is what you thought he was going to do? A. Bridge him over; that is not the first time; he did that before.

"Q. That is what you thought he was going to do? A. Yes, that is what I thought he was going to do.

"Q. And impressed with that idea, knowing in your mind he was going to do that, you attested that deed of trust, didn't you? A. Yes, on the say-so of Mr. Hemmelmann.

"Q. Yes. And attested it although there was a statement · contained in it that it was authorized by a meeting of the stockholders? A. Well, I didn't read that.

"Q. You didn't read that ? A. No, I didn't read it at all.

"Q. You did not then read the acknowledgment in which it was stated that the action of the company in making this deed of trust was authorized by the board of directors? You did not read that? A. No. Well, I might have glanced over it casually, but I—I didn't pay much attention to that. The only attention—I didn't really want to sign it. He needed the money and he said he was broke and he begged me to go down there and finally I consented. It was persuasion.

"Q. And although you knew what he was going to do with this money, and how he was going to do it, you did not notify the Northwestern Bank so that they would not lend any money on the strength of the company's paper, did you? A. Don't you think the Northwestern Bank——

"Q. Did you notify them? A. Didn't they take——

"Q. Did you notify the bank? A. I did not.

"Q. No. A. They knew more about it than I did.

"Q. Did the bank know—did you notify the bank you had signed this deed of trust under protest? A. I did not.

"Q. Did you notify the bank not to let him have any money for the company on that? A. They wouldn't have paid any attention anyhow.

"Q. Did you do that? A. I did not."

He also testified that "the bank was doing business with Mr. Grafeman in person. I had no dealings with the bank. They asked for statements; Mr. Grafeman furnished them in his own handwriting. I never made out a statement. They didn't pay any attention to me. They took their statements from William Grafeman."

Failure of Mannebach to notify defendant bank of the false recitals in the body and in the certificate of acknowledgment is not pleaded as an act of estoppel, but even if it had been pleaded and even if it appeared that Mannebach had actual knowledge of their existence, there is no proof that a majority of the board of directors had such knowledge prior to the receivership which commenced November 12, 1917, and possibly not until after William Grafeman's death, which occurred more than seven months after the deed of trust was executed and delivered. Furthermore, Mannebach's testimony throughout shows that he had no thought or suspicion that if William Grafeman succeeded in getting money on the deed of trust it would be for the use or benefit of plaintiff. On the contrary, whatever suspicions he had were to the effect that William Grafeman would get the money for his own use, and this brings us to a consideration of the circumstances surrounding the entry of the $50,000 discount as of May 17, 1917, in plaintiff's pass book issued and posted by defendant bank.

Witness Luebbert, testifying for defendants, said that this entry was made in the pass book at the end of the month, which would have been the last of May, 1917. Mr. Mannebach testified that William Grafeman had possession of this pass book from May 17, 1917, until it was turned over to Mr. Kessler, the auditor, three or four months later, when he saw the entry for the first time and at the auditor's direction made the entry in plaintiff's "Petty cash book," "31st, discount, fifty thousand dollars." In explaining this direction the auditor stated that when he learned that plaintiff was in debt he just assumed that this item represented plaintiff's debt to defendant bank. Neither Mannebach nor plaintiff, therefore, is to be charged with this entry made in plaintiff's cash book in August or September, 1917, at the direction of the examining auditor. At most this entry can only mean that Mannebach's attention was called to the $50,000 discount entry in plaintiff's pass book, and he testified that this was the first knowledge he had of that fact, and the fact that this item had not been posted on plaintiff's books bears out Mannebach's statement of his lack of knowledge, because if he had known of this pass book entry he would doubtless have credited the amount to William Grafeman just as he had been doing through the previous years and

315 Mo.—55.

as William Grafeman had directed him to do with every deposit which did not come in the regular course of business, it being the understanding that such items were individual funds of William Grafeman. This practice and course of dealing extended to the discounts and deposits represented by two of the notes aggregating $30,000 taken up May 17, 1917, as clearly appears from plaintiff's books and conversations had between William Grafeman, Mr. Kessler and Mr. Mannebach. With the express authorization of William Grafeman the auditor, in his report dated July 31, 1917, transmitted to William Grafeman under date of September 19, 1917, and according to witness Foote received by defendant bank in October or November, 1917, so treated the $10,000 pass book entry of April 20, 1917, representing the proceeds of the third note taken up May 17, 1917. Instead, therefore, of the record showing that plaintiff received and retained $50,000 borrowed from defendant bank on May 17, 1917, it clearly appears that $40,000 of this amount immediately went to take up notes which William Grafeman had individually indorsed, and the proceeds of which he had long since individually absorbed, plaintiff's bank account being the mere conduit, just as in the transaction of May 17, 1917, which William Grafeman used for that purpose. It also appears that the additional loan of $10,000 included in the $50,000 note dated May 17, 1917, was likewise individually absorbed by William Grafeman, for it was taken into consideration by Mr. Kessler, the auditor, in making up his statements in the summer and fall of 1917, some months prior to William Grafeman's death. On this point Mr. Kessler testified as follows:

"Q. Mr. Kessler, the reason for charging all these matters in the final wind-up to the Grafeman account was this, wasn't it, that the company had no bills payable account, and you saw that it had been the practice apparently from the beginning of the corporation to carry to William Grafeman's individual account all of the financial transactions of the company? A. No; I think that it was merely incidental. The reason for my charging it all to Mr. Grafeman was that Mr. Grafeman admitted that all of the funds were drawn; that is, the net difference between the funds drawn and the funds that were deposited by him to the company's credits, were used by him in some private venture, although he claimed, too, that they grew out of lossess originally sustained by the company, which he took upon himself."

At the first trial Mr. Obernier, cashier of defendant bank, testified that a bank examiner had suggested in the early part of 1917 that he get security for the Grafeman Dairy Company loan, which then amounted to $30,000, and on that account when William Grafeman approached his bank for an additional loan of $10,000 in February, 1917, he told him that security would be required. On the second

trial he testified that his previous testimony was erroneous, and that the examiner had requested collateral for the personal notes of William Grafeman at the bank, then aggregating some $45,000, and this was after the deed of trust was given. Be that as it may, this witness was pressing William Grafeman for additional security on his personal indebtedness. In addition to his individual paper he was indorser on the Grafeman Dairy Company notes aggregating $30,000. The bank had previously considered both loans perfectly good, but at the last trial this witness positively asserts that as early as February, 1917, his bank was pressing William Grafeman for additional security for his personal indebtedness. Cross-examined on this point he testified as follows:

"Q. You already had security, didn't you, for his personal indebtedness? A. We wanted additional security.

"Q. What additional security did you ask for? A. Anything that he had." Previous to this time the bank had considered that his individual indorsement enhanced the value of the Dairy Company paper and made it absolutely good. Evidently William Grafeman could put his hands on no other security and said to this witness, "I will send you up a deed of trust." The alacrity with which the bank's board of directors acted on this suggestion even to the extent of extending an additional loan of $10,000 can be well imagined in the light of their anxiety as to William Grafeman's personal notes and the consequent impairment of their faith in the value of his indorsement. The opportunity to replace this shrinking security with a substantial real estate mortgage well worth $50,000, and at the same time get William Grafeman's name off the Dairy Company paper, thereby lessening the strain on his personal credit, and to that extent bolstering up his personal indebtedness to the bank, was the next thing to getting additional security for his personal indebtedness, and it was not to be passed up even though William Grafeman's terms swelled the total indebtedness by $20,000, notwithstanding the bank was then in possession of late financial statements, both personal and corporate, submitted by William Grafeman, which the bank knew to be false. Nor did the bank follow up its usual practice of requiring a certified copy of the action of the board of directors authorizing the deed of trust. We are constrained to hold with the trial court that defendant bank did not take the deed of trust and notes without knowledge of their infirmity, and plaintiff received no consideration therefor. Not only was the entire $50,000 individually absorbed by William Grafeman, but getting down to the real facts, by this transaction plaintiff not only failed to receive any benefit from this pledge, but it was deprived of William Grafeman's personal indorsement on its paper and its apparent indebtedness greatly increased, all without the knowledge of a majority of plaintiff's board of directors until

long after William Grafeman had absorbed the proceeds of the pledge. On a careful review of the pleadings and evidence we are unable to find that respondent received and retained the proceeds of the pledge so that it is now estopped to question the validity of the deed of trust.

(2)  The second ground of estoppel pleaded by appellants is respondent's conduct in permitting William Grafeman to transact and manage its affairs and empowering him to draw and deliver checks and other commercial paper in its name. The only unau-

**Ordinary Business.** thorized act of William Grafeman of which respondent complained in this proceeding was his execution and delivery of this deed of trust on its real estate, and we fail to see any connection whatever between this unauthorized act and the usual and ordinary authorized acts of transacting and managing the affairs and drawing and delivering checks and other commercial paper of the corporation. Appellants do not plead that they were deceived or led into accepting this pledge by any of these acts which are usually authorized and delegated to some officer of a business corporation, and we find no evidence that they were. There is a species of estoppel by misrepresentation designated in the books as "estoppel by negligence," since the estoppel arises because the negligence gives credibility to the unauthorized misrepresentation, express or implied, of a third person (21 C. J. 1060), but such is neither pleaded nor proved in this cause. This ground is also ruled against appellants.

IV. In their printed argument appellants insist that plaintiff is estopped by the acts of its secretary, Mannebach, as its agent. If this argument is in point, then, as indicated on page 613 of Bige-

**Secretary.** low on Estoppel (6 Ed.), the case is one of agency and not of estoppel. However, appellants' position would not be improved in such case. The unauthorized act of the secretary in attesting a deed of trust would no more bind the corporation than the unauthorized act of the president in executing and delivering it. It is not even claimed that either acted within the scope of his agency. Outside of this one unauthorized act the record does not show that Mannebach did or said anything that can be construed as misleading defendant bank or inducing it to accept this security or make the loan. The question of agency is not in the case.

V.  In their reply brief appellants strenuously urge that this unauthorized deed of trust was ratified by plaintiff's board of directors

**Ratification.** through their silence and apparent acquiescence in the transaction after it came to their knowledge. Suffice it to say that a complete answer appears in the fact that they pleaded no such defense. Ratification and estoppel are thus distinguished in 21 Corpus Juris, 1115: "The distinction between a contract inten-

tionally assented to, or ratified in fact, and an estoppel to deny the validity of the contract, is very wide. In the former case the party is bound because he intended to be; in the latter, he is bound notwithstanding there was no such intention, because the other party will be prejudiced and defrauded by his conduct unless the law treats him as legally bound.'' Even if this distinction be disregarded and appellants' plea of benefits received and retained be treated as an alleged act of ratification as well as of estoppel it nevertheless shares the same fate, for we have already found that plaintiff received no consideration for the deed of trust.

Again, even though appellants' argument be read as directed to what is known as ''estoppel by silence'' or ''estoppel by laches,'' such must be pleaded (Turner v. Edmondston, 210 Mo. l. c. 428; Coleman v. Ins. Co., 273 Mo. l. c. 631), and the record in this case is barren of any such pleading. However, even if these grounds of estoppel had been sufficiently pleaded appellants should not prevail in this proceeding under the facts in evidence. It must be borne in mind that this is a proceeding in equity to relieve plaintiff's real estate of an apparent lien of record, and not the determination of a question of debt. Whether or not plaintiff is legally liable for the $50,000 note dated May 17, 1917, is another question. A necessary element of estoppel is that the party urging it must have done or refrained from doing something to his prejudice while relying upon the conduct complained of. Prior to May 17, 1917, defendant bank was using every endeavor to get additional security on William Grafeman's personal notes, asking for ''anything that he had,'' and it appears that the bank never thereafter relaxed its efforts, although they proved ineffectual, for the record bears out Mannebach's assertion that William Grafeman was already ''broke.'' So regardless of plaintiff's silence and delay there was nothing the bank could have done that it did not do to get its money out of William Grafeman. Not until a receiver was appointed for the Grafeman Dairy Company in November, 1917, and possibly not until William Grafeman's death in December of the same year, did a majority of plaintiff's board of directors have actual knowledge that defendant bank was claiming a lien on its real estate through this deed of trust. The solvency of the corporation was then in question, but a few months later these financial doubts were dissipated, its solvency demonstrated, the receivership closed, and as far as the record shows plaintiff is not now and never has been insolvent. If defendant bank was hurt by justified reliance on plaintiff's silence and delay we are unable to discover it from the record before us. William Grafeman's persistent failure to furnish evidence of his authority to execute the deed of trust in the face of the bank's repeated requests therefor was sufficient to put the bank on inquiry before a majority of plaintiff's board of directors

had either actual or constructive knowledge of the execution and de-livery of the deed of trust. The pleadings and proof do not bring this case within the rule of ratification cited by appellants in 14A Corpus-Juris 384, and it is distinguished from the case of Josephine Hospital Corporation v. Modoc Realty Co., 270 S. W. 638, upon which appellants strongly rely, in that ratification or approval as well as specific acts of estoppel were there expressly pleaded and proved, and the rights of innocent third parties had clearly intervened. Other cases cited by appellants are not as nearly in point.

The judgment is affirmed. All concur, except *Otto, J.*, who dissents, and *Graves, J.*, who is absent.

## ON MOTION FOR REHEARING

ATWOOD, J.—In their motion for rehearing counsel for appel-lants say that "the holding of the court that it is necessary to plead the acts relied upon as constituting ratification is in conflict with a controlling decision of this court, to which the attention of the court was not called through inadvertence of counsel, viz: Fairgate Realty Co. v. Drozda, 181 S. W. 398." The decision cited deals only with matters of estoppel *in pais* arising out of the negligence of plain-tiff's board of directors which appeared from the testimony of plain-tiff's own witnesses. We held that in such case the defense of estoppel *in pais* was available, though not specially pleaded. We find no men-tion of ratification in the opinion, but even if, as appellants here seem to think, ratification was an element of the estoppel in that case, we have announced no strange or discordant doctrine in the foregoing opinion. On appellants' first appeal, Grafeman Dairy Co. v. North-western Bank, 290 Mo. l. c. 333, we recognized the above doctrine, and carefully looked for matters of estoppel in plaintiff's own evidence then before us, but found none. On the present appeal we have done more, in that we have examined all the evidence in the light of certain matters or estoppel which we hold are pleaded, and we are still un-able to find that plaintiff is estopped. We have ruled without excep-tion in this State that the facts relied on to show equitable estoppel must be specifically pleaded and proved by defendant unless they ap-pear from the case made by plaintiff.

Adverting to our opinion as it deals with ratification and acquies-cence, we have not sought to go beyond the rule announced by WAG-NER, J., in the early case of Northrup v. Mississippi Valley Ins. Co., 47 Mo. l. c. 444, that "whenever a defendant intends to rest his de-fense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out according to the statute, in ordinary and concise language, else he will be pre-cluded from giving evidence of it upon the trial." We have followed

this rule in Kelerher v. Henderson, 203 Mo. 1. c. 512, and in many other cases. But, appellants say that in their answer they denied generally plaintiff's allegations "that said purported notes and deed of trust were never authorized by the board of directors, nor by the stockholders of the plaintiff . . . and that if the said William Grafeman executed said purported notes and deed of trust, he did so on his own account and responsibility, and without the authority, knowledge or consent of plaintiff." Therefore, appellants say, they have raised the issue of ratification or acquiescence. As to the effect of a general denial, we said in Musser v. Adler, 86 Mo. 1. c. 449, that it, "puts in issue the facts pleaded in the petition, not the liability. The facts from which the law draws the conclusion of non-liability, must be pleaded in the answer when they are not stated in the petition." See, also, Beheret v. Myers, 240 Mo. 1. c. 83. As said in Bigelow on Estoppel, cited by appellants (6 Ed.) page 493, in speaking of acquiescence and ratification: "Neither the one nor the other, however, can be more than part of an estoppel, at best." Again, the same authority at page 757, speaking of ratification and estoppel, reads: "At most they are but facts which may serve to supply something otherwise wanting to an estoppel." The answer in this case does not stop with a general denial. It goes on and specially pleads facts by reason of which, it in terms alleges, plaintiff "is estopped" from questioning the validity of the deed of trust. Having thus pleaded a part of the facts relied on to show equitable estoppel we think all should have been specially pleaded in the answer, but even if under all the pleadings defendants were entitled to show the facts which they now say constitute acquiescence and ratification on the part of plaintiff without specially pleading them, yet upon the authority cited these facts could at most be nothing more than parts of the alleged estoppel, and they were fully considered in passing on the estoppel. In arriving at our decision we have not stood upon the ceremony of our view as to the sufficiency of the answer, but have considered all the facts in evidence, whether specially pleaded or not, and most of them are discussed at some length in the opinion. Appellant's briefs throughout clearly indicate their absolute reliance upon equitable estoppel, and after a careful consideration of the motion we discover no sufficient ground for a rehearing.

Appellant's motion for rehearing is overruled.